ENOCH DERIFIELD *et al. v.* JAYSON MAYNARD *et al.*

(No. 9463)

Submitted April 5, 1944. Decided April 25, 1944.

KENNA, JUDGE, absent.

*F. F. Scaggs,* for appellants.
*M. J. Ferguson,* for appellees.

FOX, JUDGE:

The plaintiffs, the owners, in part, of a tract of seventy acres of land, situated on Missouri Branch, a tributary of the Right Hand Fork of Twelve-Pole Creek, in Wayne

County, inherited by them from their father, D. C. Deri-field, to whom it had been conveyed in the year 1889, instituted their suit and filed their bill in equity in the Circuit Court of Wayne County, seeking to enjoin the defendants from "trespassing upon the lands of these plaintiffs, or from constructing or attempting to construct any passway or road over plaintiffs' land; and further restrained and enjoined from in any manner trespassing upon or injuring the plaintiffs' land; or from moving said saw mill over plaintiffs' land; or from removing any of the manufactured products from said mill over plaintiffs' land, or any part thereof; or from cutting any timber, removing any fence or otherwise interfering with the quiet enjoyment or possession of these lands by these plaintiffs." The timber referred to in the prayer of their bill, quoted above, is that standing and being on a tract of six hundred acres of land, sold to the defendants by verbal contract by one Byron Smith, which had formerly been the property of the Huntington Development and Gas Company, and a temporary injunction was awarded, as prayed for in the bill, on the 28th day of April, 1942.

Both the seventy-acre tract owned by the plaintiffs and the six hundred-acre tract from which the defendants claim the right to remove the timber, lie on Missouri Branch, and the seventy-acre tract lies below the six hundred-acre tract, and between that tract and State Highway No. 52, which, at that point, follows the general course of Twelve-Pole Creek. The record clearly shows that for fifty years or more a road up Missouri Branch, closely approximating the bed of the stream, had been used by various persons living on the branch for foot, horse and vehicle travel, not including automobiles. Some timber was transported down the creek through the seventy-acre tract, in some instances with the consent of the owners, and for which compensation was paid. This travel seems to have decreased in recent years. The road up the branch appears to have been used as a "short cut" from the road following Twelve-Pole Creek to the road along the ridge, which road led

from said creek, below the mouth of Missouri Branch, and extended around the water-shed of Missouri Branch for some distance, and then down Milam's Creek to the left fork of Twelve-Pole Creek, thus making a connecting link between the right and left forks of said creek. There is nothing in the record showing that the road up Missouri Branch had ever been established, claimed or recognized as a public road, and it is clear that no work was ever done thereon by original construction, repair or otherwise, by any public authority. In short, all that does appear clearly is, that over a long period of time people had used said road at various times and for various purposes; but there is no showing that any such use was under a claim of right thereto on the part of any person so using the same, or that, with any knowledge of any such claim of right, plaintiffs acquiesced therein.

The answer of the defendants sets up, in substance and effect, that they purchased the timber on the six hundred-acre tract, with the understanding that they would be entitled to remove the same over the road down Missouri Branch; that there was no other feasible or practical route for such removal; that to deprive them of such right of removal would destroy the value of the timber purchased; and they deny that they have trespassed or will trespass on plaintiffs' land, because they aver that the road down Missouri Branch is a public road; but, if not a public road, that they have acquired, through their predecessors in title, a prescriptive right to use said road for the removal of the timber purchased by them.

Testimony was taken in the case, and on the final hearing the temporary injunction was dissolved by decree entered June 9, 1942, and the plaintiffs' bill dismissed. The pertinent part of the court's decree reads as follows:

> "The Court is further of the opinion and so finds that the road in question over the 70 acre tract is not a public road but is a private road acquired by prescription which private road is an easement running with the land on which the defendants have a contract to cut and remove the timber.

"Upon consideration whereof the court is of opinion that the injunction heretofore awarded in this cause ought to be wholly dissolved, for the reason that the court is of opinion that the right of way over the land of the plaintiffs by prescription has been established for the use of the land contracted to be purchased by defendants from Byron Smith who purchased said land from the Huntington Gas & Development Company, a corporation. It is therefore adjudged, ordered and decreed that the said injunction be and the same is hereby wholly dissolved, and the plaintiffs' bill be dismissed.

"It is further adjudged, ordered and decreed that the plaintiffs shall have the right to maintain reasonable agricultural fence across said roadway and must maintain across said roadway a reasonable gate or opening for the use of the defendants, their agents, or assigns."

From this decree, the plaintiffs prosecute this appeal.

Two procedural questions are presented: one, raised by the plaintiffs, that Byron Smith should have been made a party defendant. The answer is that nothing prevented the plaintiffs from making Smith a party, and the error, if any, was of their own making. The other question, raised by the defendants, is that all of the holders of title to the seventy-acre tract of land in question were not made plaintiffs, or otherwise brought into the suit. We do not think this was required. Any one or more of the heirs of D. C. Derifield could have maintained a suit to protect his or their interest in their inheritance, and it was not necessary to join all of them as plaintiffs, or to make defendants all those who were not so joined. These observations are in keeping with the ruling of the trial court on the points raised.

Three questions are presented: (1) Was the road up Missouri Branch a public highway; (2) if not a public highway, were the defendants entitled to use this road as a way of necessity to remove the timber owned by them; and (3) if the questions stated be answered in the

negative, have the defendants a prescriptive right to use said road to remove said timber? These questions will be discussed in the order stated.

When we seek to ascertain whether a public road has been established, we first go to the records of the court or other public body having power to locate, establish and open public highways. Most of our highways have been established by the county courts of the various counties, but that power is now vested in the state road commission. In most instances there is a public record of the establishment of roads, but not infrequently no such record exists, although a road may have been long travelled, generally recognized as a public road by public authorities and the public in general, and public moneys and labor expended thereon. To meet such situations, we have Code, 17-1-3, in which the following provision appears: "* * * Any road shall be conclusively presumed to have been established when it has been used by the public for a period of ten years or more, and public moneys or labor have been expended thereon, whether there be any record of its conveyance, dedication or appropriation to public use or not. * * *".

The road up Missouri Branch has never been established by the order of any public authority; it was not originally constructed by, nor has it been maintained or repaired by any public authority, or public money or labor expended thereon. The trial court was, therefore, correct in its holding that said road was not a public highway.

We think the defendant has wholly failed to establish a right to use the road in question on the theory of a way of necessity. "A way of necessity usually arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is entirely surrounded by the land from which it is severed or by this land and the land of strangers. It is a universally established principle that where a tract of land is conveyed which is separated from the highway by other lands of the grantor or surrounded by his lands

or by his and those of third persons, there arises, by implication, in favor of the grantee, a way of necessity across the premises of the grantor to the highway." 17 Am. Jur. 960. We have not been referred to any conveyance whereby the plaintiffs, or their predecessors in title, have conveyed to the defendants, or their predecessors in title, any part of the six hundred acres on which the timber in question stands. There would seem, therefore, to be no foundation for the claim that defendants have a right of way by necessity over the land of the plaintiffs, even if there was no other way over which their timber could be transported to market. But aside from this, the rule is that a real necessity must exist, and, in some cases, it is said that it must be indispensable. *Shaver* v. *Edgell,* 48 W. Va. 502, 37 S. E. 664. The more modern rule seems to be that "The rule of a strict necessity applicable to an implied reservation or grant of an easement is not limited to one of absolute necessity, but to reasonable necessity as distinguished from mere convenience." 3 Va. and W. Va. Digest, 934, and cases there cited. Here there is no sufficient showing that the timber may not be removed by ways other than over plaintiffs' land, and down Missouri Branch. The fact that it may be more convenient and more profitable to the defendants to remove the timber over that road is not sufficient; nor is it important that the defendants purchased the timber claimed by them with the understanding that there was a public highway down said branch. The right to use said road must have existed in fact when the purchase was made; and if the purchasers of the timber in question neglected to thoroughly investigate the true situation, it is a misfortune which we have no power to alleviate.

We are unable to find any grounds for a holding that the defendants have the right by prescription to use the road in question. That such a right of way may be acquired by prescription is clear. In *Post* v. *Wallace,* 119 W. Va. 132, 192 S. E. 112, we held, "The open, continuous and uninterrupted use of a road over the land of another,

under a *bona fide* claim of right, and without objection from the owner, for a period of ten years, creates in the user of such road a right by prescription to continued use thereof." Many other cases could be cited in support of that holding. But do the defendants come within the rule stated in that case? There is no showing that any owner of the six hundred-acre tract of land, or any part thereof, ever used the road down Missouri Branch at any time, much less for a period of ten years under a claim of right and without objection on the part of the owners of the seventy-acre tract now owned, in part, by the plaintiffs. Such user by other parties does not inure to the benefit of the defendants. It would only do so when accompanied by the expenditure of public money and labor, and its use for a period of ten years or more, in which event it would become a public highway. A prescriptive right is, in a sense, personal to the party who claims under it, in that his personal use of the easement or right of way is what creates the prescriptive right to continue its use. If such user is in connection with the ownership of land, the use attaches to such land, becomes appurtenant thereto, and may pass with the conveyance of the land; but it originated from a personal assertion of the right, and by usage and acquiescence it becomes a vested right. Here the defendants wholly fail to establish such use of the road down Missouri Branch, by themselves or by their predecessors in title, under which a prescriptive right to continue the use of such road has become vested in them, and we think the trial court erred in holding that they had such right.

We therefore reverse the decree of the Circuit Court of Wayne County entered on the 9th day of June, 1942, and an order will be entered here perpetuating the temporary injunction awarded by said court herein on the 28th day of April, 1942.

*Reversed; order entered here.*