395 S.E.2d 535

Howard SHREWSBURY, Jr. and Sybil Shrewsbury, his Wife; Roger Sexton; Douglas Bowling and Lylia Bowling, his Wife,

v.

Shirley HUMPHREY and Garnett Humphrey, her Husband; Jack White and Valarie White, his Wife; Chris Toler and Patricia Toler, his Wife; Bill Pritchard and Delores Pritchard, his Wife; Judy Hall, Single; Donald Hall; Douglas Davis and Juanita Davis, his Wife.

Douglas Ronald DAVIS

v.

Howard SHREWSBURY, Jr., Sybil Shrewsbury, Roger Blaine Sexton, Doris Jean Sexton, Douglas Bowling, and Unnamed Others Acting Independently or in Concert Therewith.

No. 19355.

Supreme Court of Appeals of West Virginia.

July 20, 1990.

Randall Veneri, Anthony Beneri, Princeton, for Howard Shrewsbury, Jr. et al.

R. Thomas Czarnik, Princeton, for Shirley & Garnett Humphrey et al.

PER CURIAM:

The appellants, Douglas Ronald Davis, et al., appeal an order of the Circuit Court of Mercer County entered on February 25, 1988, which held that: (1) the appellees, Howard and Sybil Shrewsbury, had established that they were entitled to a prescriptive easement over the roadway leading from their properties to the Wright Mountain Road; (2) the appellee, Roger Blaine Sexton, had established that he was entitled to an easement by equitable estoppel over the same roadway; and (3) the appellees, Douglas and Lylia Bowling, had acquired their right of usage to the roadway in question through their predecessor in title, Howard and Sybil Shrewsbury.

In 1976, the appellees, Mr. and Mrs. Shrewsbury, purchased approximately 81 acres from Mary Elizabeth Rierison in Mercer County, West Virginia, in an area commonly known as Wright Mountain. At the time Mr. and Mrs. Shrewsbury purchased that real estate, Mrs. Rierison advised them that they had the right to use the roadway that led from their property to the Wright Mountain Road, being State Route 71/12. The roadway in question is located on property owned by the appellant, Douglas Davis.[1]

By deed dated August 2, 1978, Mr. and Mrs. Shrewsbury conveyed 5.05 acres of their property to appellee, Roger Blaine Sexton, Mrs. Shrewsbury's son from a previous marriage.[2] Mr. Sexton asked Mr. Davis for permission to use the roadway and offered to help Mr. Davis maintain it. Mr. Davis agreed to allow Mr. Sexton to use the roadway.

Mr. and Mrs. Shrewsbury sold approximately twelve acres of land to the appellees, Douglas and Lylia Bowling, in September of 1987. Mr. and Mrs. Bowling also sought to use the roadway as a means of egress and ingress to their property.

After the Bowlings purchased the property from Mr. and Mrs. Shrewsbury, Mr. Davis constructed a barrier across the roadway to prevent the appellees from using the roadway as a means of access to their property. The appellees then filed a complaint against the appellants, and

1. Appellant Davis inherited this property in 1979, from his mother, Gerdie Davis. Gerdie and Willard Davis had purchased part of this property from G.W. Shutt in 1954, and the other part of the property from Mary and W.W. Underwood in 1964.

2. There was evidence that Mr. Sexton was originally offered a tract of land by Mr. Shrewsbury located on the Wright Mountain Road. The Wright Mountain Community Church, however, sought to purchase that tract of land. Mr. Sexton, therefore, agreed to allow the church to purchase that tract of land and accepted another tract of land at a more distant location from Wright Mountain Road.

sought a temporary restraining order and permanent injunction.

By order entered on February 25, 1988, the circuit court ruled that: (1) Mr. and Mrs. Shrewsbury were entitled to a prescriptive easement; (2) Mr. Sexton was entitled to an easement by equitable estoppel; and (3) Mr. and Mrs. Bowling acquired their right of usage to the roadway through their predecessor in title, Mr. and Mrs. Shrewsbury. The circuit court limited the appellees' use of the roadway for the purpose of egress and ingress to their residential properties, and enjoined them from increasing or extending their usage of the roadway beyond what the court had granted. Furthermore, the circuit court directed the appellees to contribute to the maintenance of the roadway, and ordered them not to alter or change the width or course of the roadway or to interfere with the other property owners' use of the roadway.

On February 29, 1988, the appellants filed motions for an amendment of the judgment pursuant to Rule 52(b) of the *West Virginia Rules of Civil Procedure,* or for a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure.* By order dated December 19, 1988, the circuit court denied the appellants' motion, and this appeal followed.

## I

The appellants first contend that the circuit court erred in finding that Mr. and Mrs. Shrewsbury had established that they were entitled to a prescriptive easement over the roadway.

■ The elements necessary to establish a prescriptive easement were stated by this Court in syllabus point 2 of *Keller v. Hartman,* 175 W.Va. 418, 333 S.E.2d 89 (1985):

'The open, continuous and uninterrupted use of a road over the land of another,

under *bona fide* claim of right, and without objection from the owner, for a period of ten years, creates in the user of such road a right by prescription to the continued use thereof. In the absence of any one or all of such requisites, the claimant of a private way does not acquire such way by prescription over the lands of another.' Syl. pt. 1, *Holland v. Flanagan,* 139 W.Va. 884, 81 S.E.2d 908 (1954).

Furthermore, the party who asserts the right to a prescriptive easement has the burden of proving such claim as we stated in syllabus point 3 of *Keller:* " 'The burden of proving an easement rests on the party claiming such right and must be established by clear and convincing evidence.' Syl. pt. 1, *Berkeley Development Corp. v. Hutzler,* 159 W.Va. 844, 229 S.E.2d 732 (1976)." [3]

■ In the record before us, we find that Mr. and Mrs. Shrewsbury continuously used the roadway as a means of access to their property from 1976 until 1987. When Mr. and Mrs. Shrewsbury purchased their property from Mrs. Rierison in 1976, she represented to them that they had a right to use that roadway as access to the back part of their property. Furthermore, Mr. and Mrs. Shrewsbury used this roadway for over ten years with the knowledge of the adjacent property owners and Mr. Davis, on whose property the roadway is located. On the basis of these facts, we cannot conclude that the trial court erred in ruling that Mr. and Mrs. Shrewsbury had established that they were entitled to a prescriptive easement over the roadway.

## II

The appellants also assert that the circuit court erred in finding that Mr. Sexton was entitled to an easement by equitable estoppel.

---

**3.** On appeal, the appellant has asserted that the circuit court used an improper burden of proof in its written order by allowing the appellees to establish a prescriptive easement by a preponderance of the evidence rather than clear and convincing evidence. Since the appellant did not raise the question of an improper burden of proof in the trial court and has first raised this issue on appeal, we consider it waived. *See, e.g., Roberts v. Stevens Clinic Hospital, Inc.,* 176 W.Va. 492, 499, 345 S.E.2d 791, 798–99 (1986); *Bell v. West,* 168 W.Va. 391, 397, 284 S.E.2d 885, 888 (1981).

This Court recognized that an easement may arise by way of estoppel in *Cottrell v. Nurnberger*, 131 W.Va. 391, 47 S.E.2d 454 (1948). In *Cottrell*, we recognized that the basic elements of an easement by estoppel are a representation made to a vendee and the reliance thereon. We distinguished between a representation and a promise:

In the law of contracts a representation is 'a statement express or implied made by one of two contracting parties to the other, before or at the time of making the contract, in regard to some past or existing fact, circumstance, or state of facts pertinent to the contract, which is influential in bringing about the agreement.' Black's Law Dictionary, 3rd ed., 1534. A promise is 'a declaration, verbal or written, made by one person to another for a good or valuable consideration, in the nature of a covenant by which the promisor binds himself to do or forbear some act, and gives to the promisee a legal right to demand and enforce a fulfillment.' Black's Law Dictionary, 3rd ed., 1433.

*Id.* 131 W.Va. at 405, 47 S.E.2d at 461. We further observed in *Cottrell* that "[a]n oral promise to grant an easement is not sufficient to raise an estoppel in favor of one who has acted upon it. There must be something more than a promise to grant it, even if there was a consideration for the promise, and the promisee has acted upon the promise." (citation omitted). 131 W.Va. at 406, 47 S.E.2d at 461. We recognized that the basis of equitable estoppel is fraudulent or inequitable conduct. *Id.* 131 W.Va. at 406, 47 S.E.2d at 461. *See also Bennett v. Charles Corp.*, 159 W.Va. 705, 713, 226 S.E.2d 559, 564 (1976).

We stated the general rule governing the doctrine of equitable estoppel in syllabus point 6 of *Stuart v. Lake Washington Realty Corp.*, 141 W.Va. 627, 92 S.E.2d 891 (1956):

The general rule governing the doctrine of equitable estoppel is that in order to constitute equitable estoppel or estoppel in pais there must exist a false representation or a concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.

Thus, there must be a showing that a representation was made and that the party relied upon that representation before an easement by estoppel can be established.

■ There was evidence before the circuit court that Mr. Sexton had agreed to purchase a tract of land located a greater distance from Wright Mountain Road so that the Wright Mountain Community Church could purchase a tract of land originally offered to Mr. Sexton.[4] Two of the appellants, Mr. Davis and Mr. Humphrey, were trustees of the church. Mr. Sexton testified that he accepted the property on the representation of Mr. Davis that he could use the roadway. Mr. Sexton further testified that he believed he had a right to use the roadway and that the right of way had served this property for several years. Finally, Mr. Sexton testified that he maintained the roadway in the winter and improved it with gravel. Mr. Sexton used the roadway from 1979 until 1987.

■ On the basis of this evidence, the circuit court concluded that Mr. Sexton had "an easement across the roadway leading from his properties to the Wright Mountain Road as a result of his reliance upon the statements made to him concerning his right to use the roadway, and in addition thereto the conduct of the [appellants] Shirley Humphrey, et al., was of such a nature as to make it inequitable to prevent Roger

---

4. Mr. Humphrey, a trustee of the Wright Mountain Community Church who is also an appellant in this case, testified that Mr. and Mrs. Shrewsbury were originally planning to give the particular lot where the church is now located to Mr. Sexton. Mr. Humphrey further testified that he talked to Mr. and Mrs. Shrewsbury about the lot, and "they said they would talk to Roger about the lot and see what could be done."

Sexton from usage of the roadway." [5] We stated in syllabus point 1 of *Burns v. Goff,* 164 W.Va. 301, 262 S.E.2d 772 (1980):

'The finding of a trial court upon the facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such finding.' Syl. pt. 7, *Bluefield Supply Company v. Frankels Appliances, Inc.,* 149 W.Va. 622, 142 S.E.2d 898 (1965).

We conclude that the evidence does not preponderate against the trial court's findings on this issue.

### III

■ The appellants also aver that the circuit court erred in finding that Mr. and Mrs. Bowling acquired the right of usage to the roadway through their predecessor in title, Mr. and Mrs. Shrewsbury.

We recognized in *Derifield v. Maynard,* 126 W.Va. 750, 756, 30 S.E.2d 10, 13 (1944):

A prescriptive right is, in a sense, personal to the party who claims under it, in that his personal use of the easement or right of way is what creates the prescriptive right to continue its use. If such user is in connection with the ownership of land, the use attaches to such land, becomes appurtenant thereto, and may pass with the conveyance of the land; but it originated from a personal assertion of the right, and by usage and acquiescence it becomes a vested right.

*See also Holland v. Flanagan,* 139 W.Va. 884, 81 S.E.2d 908 (1954).

Since Mr. and Mrs. Shrewsbury established a prescriptive easement over the roadway, that prescriptive easement became appurtenant to their land and thus may pass with the conveyance of that land.[6]

### IV

■ Finally, the appellants contend that the circuit court erred in finding that the easement acquired by Mr. and Mrs. Bowling extended to permit a "line fence" between the Bowlings' access road and the roadway at issue to be knocked down to permit access.[7] The record indicates that the fence was maintained during the prescriptive period.

In *Rogerson v. Shepherd,* 33 W.Va. 307, 317–18, 10 S.E. 632, 636 (1889), this Court observed:

[I]f the way acquired by use, although well marked and defined, is restricted, during the time required for the establishment of the right, to a use and enjoyment thereof with bars or gates across it, the right acquired will be restricted to the same extent; and if, on the other hand, the way be well defined and fenced, and used as an open and unobstructed way during the period necessary to confer the right, the party acquiring this right of way has the right to continue to use the same in its unobstructed condition, and the owner of the servient estate has no right to change said way to another and different locality over his land, and obstruct the new way with gates.

Clearly, Mr. and Mrs. Bowling had no right to remove Mr. Davis' fence, which was maintained during the prescriptive pe-

---

5. By deed dated August 30, 1978, Mr. and Mrs. Shrewsbury conveyed the property originally offered to Mr. Sexton, to Shirley Humphrey, Roger Snyder and Douglas Davis, as trustees of the Wright Mountain Community Church.

6. We note, however, that the easement is limited as we stated in syllabus point 4 of *Foreman v. Greenburg,* 88 W.Va. 376, 106 S.E. 876 (1921): "When an easement has been acquired by prescription, the extent of the right so acquired is measured and determined by the extent of the user out of which it originated." *See also Han-*

*shew v. Zickafoose,* 173 W.Va. 151, 313 S.E.2d 427 (1984); *Burns v. Goff,* 164 W.Va. 301, 262 S.E.2d 772 (1980).

7. It is not clear from the circuit court's order whether the court actually allowed the fence to be removed between the Bowlings' access road and the roadway at issue. In fact, the circuit court enjoined the appellees "from increasing or extending the usage of such roadway" and directed them not to "alter or change the width or course of the roadway[.]"

riod, to gain access to the roadway.[8] The rights of Mr. and Mrs. Bowling are limited to the use of the roadway for ingress or egress to their property by the same access used by their predecessor in title. The circuit court erred in allowing the fence to be removed to create a new access to the roadway.

Thus, for the reasons set forth herein, the judgment of the Circuit Court of Mercer County is affirmed, in part, and reversed, in part.

Affirmed, in part; reversed, in part.

---

**8.** The fence was not actually removed by the appellees, Mr. and Mrs. Bowling. Mr. Sexton, also one of the appellees, used a bulldozer to remove the fence to provide access to Mr. and Mrs. Bowling's property.