413 S.E.2d 151

**Margie Isabell June HARDY, Plaintiff Below, Appellee,**

v.

**Larry Vernon HARDY, Defendant Below, Appellant.**

**No. 19936.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1991.

Decided Dec. 19, 1991.

Kenneth Fisher, Fisher & Fisher, Huntington, for appellee.

James W. St. Clair, St. Clair & Levine, Huntington, for appellant.

BROTHERTON, Justice:

The issue addressed in this case is one of first impression in this State: whether a personal injury award is marital property subject to equitable distribution under W.Va.Code § 48–2–1.

Larry and June Hardy were married on August 14, 1973. Both had children from previous marriages who did not live with them, and there were no children from this marriage.[1] June became a licensed practical nurse, as well as a licensed real estate agent. Larry was initially involved in sales and later worked as an insurance adjuster. In August, 1982, June was working at the Veteran's Hospital in Huntington as a licensed practical nurse and Larry was an insurance salesman for Riverside Insurance Agency in Huntington. They lived in a jointly owned home.

On August 22, 1982, Larry was mowing the lawn when the lawn mower's rotary blade broke and struck him in the leg. Both of the bones in his lower right leg were severed. The Hardys filed a lawsuit against the manufacturer, Western International Corp., about a year later. On November 19, 1986, separate judgments were entered awarding Larry $573,000 damages for his injuries and awarding June $13,000 for loss of consortium and nursing services.

The Hardys separated on March 17, 1987, and on March 31, 1987, June Hardy filed for divorce. She subsequently argued that her husband's personal injury award was marital property subject to equitable distribution. On April 21, 1987, June Hardy was granted temporary possession of a 1985 Lincoln Continental and the marital home, and Larry Hardy was ordered to make the mortgage payment and pay all joint bills and obligations incurred prior to their separation. The Hardys were granted a divorce on the grounds of irreconcilable differences on August 10, 1988. A determination as to the equitable distribution of property and other considerations was stayed pending the final decision of the family law master.

On February 14, 1989, the family law master recommended the following property division:

1. That Mrs. Hardy be granted the ownership of the former marital residence and its contents and she discharge the payments thereon;

2. That the Court declare that Mrs. Hardy's proceeds from the personal injury claim be her separate property, because these funds were paid as compensation for a loss of consortium and for her nursing services provided to Mr. Hardy. (To the extent that the nursing services might be considered lost wages, I was unable to determine

---

1. In her reply brief, the appellee states that at the time of the hearing in this case she was 57 years old and her soon-to-be ex-husband was 39. In his response, the appellant states that "at the time of and throughout their marriage, appellant was unaware that his wife was approximately eighteen years older than he."

what amount was claimed for those services);

3. That the Court declare that Mr. Hardy's personal injury proceeds are his separate property, except for $22,-000.00, the amount that was claimed as lost wages;

4. That the Court allow Mr. Hardy to keep those funds declared as marital property as part of his equitable distribution;

5. That Mr. Hardy be granted the 1979 Lincoln, the 1982 Chevette and the 1982 Cavalier as his sole and separate property;

6. That Mrs. Hardy be granted the 1985 Lincoln as her separate property;

7. That Mrs. Hardy be granted alimony in the sum of six hundred dollars ($600.00) per month, to commence on January 1, 1989, and continuing until Mrs. Hardy shall die or remarry or until Mr. Hardy's death, whichever shall first occur.

In commenting on these recommendations, the family law master expressed uncertainty as to how this Court would be likely to rule on the issue of the division of Mr. Hardy's personal injury award, but acknowledged that Mr. Hardy's personal injury award had never been commingled and that the parties had each kept their respective awards as their separate property.

Both parties protested the family law master's recommended findings. On April 7, 1989, the Circuit Court of Wayne County reversed and instructed the family law master to treat the proceeds of Mr. Hardy's personal injury award as marital property.

In a report dated May 12, 1989, the family law master made recommendations "in reliance upon the opinion of the Circuit Court of Wayne County, said ruling being that the assets of the parties resulting from a personal injury action are marital assets." Among these recommendations were the following:

1. That the ownership of the marital residence, jointly owned by the parties, be transferred to Mrs. Hardy. [Valued at approximately $100,000]

2. That Mr. Hardy make the payments on the marital home as alimony in the amount of $530 per month. [Approximately $35,000 due]

3. That Mrs. Hardy be awarded $90,000 of the proceeds of Mr. Hardy's personal injury claim.

4. That Mrs. Hardy retain the $13,000 she received through her husband's personal injury claim.

5. That Mr. Hardy be allowed to keep the rest of the personal injury proceeds as his portion of the equitable distribution. [$573,000 less one third for attorneys fees and costs]

6. That no alimony be granted to either party.

In addition, the family law master noted that Mrs. Hardy would continue to have at her disposal the $877 per month she received from workers' compensation,[2] as well as over $7,000 per year in interest income from her $90,000 share of Mr. Hardy's personal injury award, to supplement her needs. The family law master stated that Mrs. Hardy "had a long and varied work history and she should be able to be employed again at some point in the future." On August 31, 1990, the Circuit Court of Wayne County affirmed the recommendations contained in the family law master's report in spite of the exceptions filed by both parties. Mr. Hardy appealed on November 5, 1990.

█ This Court must now determine whether Larry Hardy's personal injury award should be considered marital property. West Virginia Code § 48–2–32(a) (1986) provides that "upon every judgment for annulment, divorce or separation, the court shall divide the marital property of the parties equally between the parties." Marital property is defined as "all property and earnings acquired by either spouse during a marriage ... except marital property shall not include separate property." W.Va.Code § 48–2–1(e). West Virginia Code § 48–2–1(f)(1) and (2) defines "sepa-

---

**2.** In March, 1984, June Hardy was injured while working at the Veteran's Hospital. As a result, she receives workers' compensation benefits in the amount of $877 per month.

rate property" to mean "property acquired by a person before marriage; or property acquired by a person during marriage in exchange for separate property which was acquired before the marriage...." Neither statute contains any presumption with regard to the characterization of personal injury awards.

Addressing our statutory definition of marital property, the appellant, Larry Hardy, argues that he did not "acquire" the personal injury claim during marriage because it did not arise from the labor or industry of the parties. Instead, the appellant maintains that his personal injury award is his separate property because it represents property which he acquired during the marriage in exchange for separate property which he had acquired before the marriage, in this case at birth. The appellant explains that he entered into his marriage with two good legs, employable skills, and the right to be free from pain, suffering and disability. However, during the marriage his right leg was practically severed, and thereafter he suffered pain, mental anguish, disability, disfigurement, and the loss of a substantial portion of his employable skills. Consequently, the appellant reasons that the right leg which he brought into his marriage represents separate property which was "taken" from him by the negligence of the lawn mower manufacturer, and that this loss was replaced by the Wayne County jury with an award of $573,000.

A number of early decisions involving equitable distribution concluded that a personal injury award was marital property which should be divided between the parties. *See, e.g., Liles v. Liles,* 289 Ark. 159, 711 S.W.2d 447 (1986); *In re Marriage of Dettore,* 86 Ill.App.3d 540, 42 Ill.Dec. 51, 408 N.E.2d 429 (1980); *Gan v. Gan,* 83 Ill.App.3d 265, 38 Ill.Dec. 882, 404 N.E.2d 306 (1980); *Gonzalez v. Gonzalez,* 689 S.W.2d 383 (Mo.App.1985); *Landwehr v.*

*Landwehr,* 200 N.J.Super. 56, 490 A.2d 342 (1985); *Bero v. Bero,* 134 Vt. 533, 367 A.2d 165 (1976). Such decisions were generally based upon a purely mechanical reading of statutory definitions of marital and separate property. "The mechanistic approach is literal and looks to the general statutory definitions of marital and separate property and concludes that since the award was acquired during the marriage and does not fall into the definition of separate property or into any enumerated exception to the definition of marital property, it must be marital property." *Johnson v. Johnson,* 317 N.C. 437, 346 S.E.2d 430, 435 (1986).

More recently, however, an increasing number of states have classified personal injury settlements under a framework referred to as the analytical, or purpose, approach, which draws a distinction between the economic loss suffered by the marital partnership and the economic and personal loss suffered by each individual spouse and asks what a personal injury award was intended to replace.[3] The appellant maintains that the analytical approach to a personal injury award, which recognizes personal injury awards as non-marital property, is the most enlightened and equitable solution to the problem because:

> Serious, debilitating injuries continue for a lifetime. Unfortunately many marriages do not. Compensation received for a lifetime injury should not be dissipated or substantially reduced because of the termination of the marriage. The award is the only compensation that an injured party will ever receive. To require its division with an uninjured spouse defies logic or justice.

The appellant's arguments echo the reasoning of the courts which have adopted the analytical approach. For example, the Court of Appeals of Minnesota stated that "[w]e are persuaded that the purpose of the recovery rather than the timing of the recovery controls its characterization."

---

**3.** Although the majority of states that have adopted this approach are unlike West Virginia in that they are community property states, we believe, as the Court of Appeals of Maryland stated in *Unkle v. Unkle,* 305 Md. 587, 505 A.2d 849, 853 (1986), that "the principle involved is the same—it focuses upon the costs incurred by the couple as a result of the injury and any diminution to either the community or marital property. Such diminution, if any, will occur in the same manner whether the couple resides in a community property or equitable distribution state."

*Van De Loo v. Van De Loo,* 346 N.W.2d 173, 176 (Minn.App.1984).

In *Van De Loo,* that court held that money obtained for injuries personal to a spouse is nonmarital property, but affirmed a trial court's determination that a personal injury recovery should be treated as marital property under the specific facts of that case. The court stated that "[w]hile appellant's personal injury recoveries may have been his nonmarital property, it would have been an unfair hardship not to apportion the assets purchased with those proceeds." *Id.* at 178.

In spite of its decision on the facts, the *Van De Loo* court quoted extensively from the New Jersey appellate court opinion in *Amato v. Amato,* 180 N.J.Super. 210, 434 A.2d 639 (1981), which adopted the views expressed in a concurring opinion in *Harmon v. Harmon,* 161 N.J.Super. 206, 212–18, 391 A.2d 552 (1978), as dispositive of the issue of how to characterize personal injury monies:

> The literal language of the statute ought not limit our inquiry to the time when the compensation is received. The purpose for which the property is received should control. Insurance funds, for example, paid to replace property destroyed by fire would remain the separate property of a spouse if the destroyed property had been owned by the spouse before marriage. So, too, we must look at the purpose for which the compensation was received during the marriage to determine if it is subject to distribution. If we view the recovery here simply as the replacement or restoration, so to speak, of the physical and mental health a spouse brought to the marriage, it is like an exchange for property possessed before the marriage. *Under both the common law and community property systems an injured spouse should keep funds which replace assets brought to the marriage.*

*Amato,* 434 A.2d at 643 (emphasis added). In *Amato,* the court concluded that a personal injury award received as compensation for pain, suffering, disfigurement, disability, or other debilitation of the mind or body is the nonmarital property of the injured spouse. The court explained:

> Nothing is more personal than the entirely subjective sensations of agonizing pain, mental anguish, embarrassment because of scarring or disfigurement, and outrage attending severe bodily injury. Mental injury, as well, has many of these characteristics. Equally personal are the effects of even mild or moderately severe injury. None of these, including the frustrations of diminution or loss of normal body functions or movements, can be sensed, or need they be borne, by anyone but the injured spouse. Why, then, should the law, seeking to be equitable, coin these factors into money to even partially benefit the uninjured and estranged spouse? In such case the law would literally heap insult upon injury. The uninjured spouse has his or her separate and equally personal right to an action for loss of consortium. Just as there is no equitable reason for that spouse to profit from his or her exmate's recompense for suffering, there is no justification for allocation of a share in the right to loss of consortium. The only damages truly shared are those discussed earlier, the diminution of the marital estate by loss of past wages or expenditure of money for medical expenses. Any other apportionment is unfair distribution.

*Amato,* 434 A.2d at 643. A similar discussion is found in *Johnson v. Johnson,* 317 N.C. 437, 346 S.E.2d 430, 438 (1986), wherein the Supreme Court of North Carolina concluded that "[a]fter weighing the relative strengths and weaknesses of both the mechanistic and the analytic approaches, we are of the opinion that the latter is the better reasoned."

After reviewing the above-cited cases and others, and considering as well the arguments of both parties to this case, we also conclude that the analytical approach provides the appropriate treatment of personal injury awards in the context of an equitable distribution of property. "Characterizing a personal injury recovery based on the purpose for which it was received permits separate treatment of the various components of the recovery." *Van De Loo v. Van De Loo,* 346 N.W.2d 173, 176 (Minn. App.1984).

Thus, to the extent that its purpose is to compensate an individual for pain, suffering, disability, disfigurement, or other debilitation of the mind or body, a personal injury award constitutes the separate nonmarital property of an injured spouse. However, economic losses, such as past wages and medical expenses, which diminish the marital estate are distributable as marital property when recovered in a personal injury award or settlement. The burden of proving the purpose of part or all of a personal injury recovery is on the party seeking a nonmarital classification.

In this case, we are unable to ascertain from the record exactly what portion of the appellant's $573,000 award might have been for lost wages, medical expenses, or perhaps future loss of income as a result of a diminished earning capacity.[4] Our best evidence comes from the family law master's first recommended property division dated February 4, 1989, which was rejected by the circuit court. In that report, the family law master recommended that the appellant's personal injury award be treated as his own separate property, except for $22,000, which was the amount claimed as lost wages.[5]

We also recognize that the uninjured spouse may have a claim for loss of consortium which is considered to be that spouse's own nonmarital property. In this case, Mrs. Hardy recovered $13,000 for loss of consortium and for nursing services she provided for her husband. This award was distinct and separate from Mr. Hardy's $573,000 award and, in fact, the parties themselves treated their awards as separate property, never commingling them in joint accounts.

For the reasons discussed above, we remand this case to the Circuit Court of Wayne County for a property division consistent with the findings contained in this opinion.

Reversed and remanded.

---

4. In *Amato v. Amato,* 180 N.J.Super. 210, 434 A.2d 639, 644 (1981), the Superior Court of New Jersey stated that "[t]here is no immutable rule in negligence cases requiring a plaintiff to receive a lump sum verdict encompassing pain, suffering, medical expenses and lost wages. Special jury interrogatories may be utilized to delineate the separate factors of recovery."

5. According to the appellant, $45,000 of the $573,000 award he recovered represented lost wages during marriage. The appellant argues that "[u]nder the analysis in *Johnson,* the recovery of $45,000 constitutes marital property subject to equitable distribution, thus entitling June Hardy to $22,500 of the lost wages. None of the medical expenses were paid out of marital funds and therefore should not be considered marital property. Therefore, June Hardy should only be entitled to $22,500 of the $573,000 received by Mr. Hardy in his personal injury claim."