475 S.E.2d 335

**Margie June HARDY, Plaintiff Below, Appellee,**

v.

**Larry Vernon HARDY, Defendant Below, Appellant.**

**No. 23264.**

Supreme Court of Appeals of West Virginia.

Submitted May 28, 1996.

Decided July 3, 1996.

Kenneth H. Fisher, Huntington, for Appellee.

James W. St. Clair, St. Clair and Levine, Huntington, for Appellant.

PER CURIAM:

Larry V. Hardy appeals the decision of Circuit Court of Wayne County determining, for the purposes of equitable distribution, that his lost wages totaled $123,490 from August 1982 through March 1987. On appeal, Mr. Hardy maintains that the Social Security and disability insurance payments he received during this period should have been credited against these lost wages in computing the actual loss to the marital estate. Margie Isabell June Hardy maintains that her former husband's claims for offset-ting payments should be dismissed because all of Mr. Hardy's income from any source is marital property subject to equitable distribution. In a cross-assignment of error, Ms. Hardy appeals the circuit court's denial of the $100 per month alimony recommended by the family law master. Because the family law master and the circuit court failed to consider Mr. Hardy's supplemental income in determining the economic loss to the marital estate, we reverse that portion of the circuit court's decision and remand the case for such a determination. We also reverse the portion of the circuit court's decision which denied Ms. Hardy a maintenance/alimony payment because the circuit court should have adopted the family law master's recommendation concerning maintenance/alimony.[1]

I.

FACTS AND BACKGROUND

This is our second opinion concerning the distribution of assets in the Hardys' divorce. Mr. Hardy was injured on August 22, 1982 when the rotary blade of the lawn mower he was using broke, severely injuring Mr. Hardy's right leg. Eventually, Mr. Hardy was awarded $573,000 for his personal injury, and Ms. Hardy was awarded $13,000 for a loss of consortium and her nursing services. *See Hardy v. Hardy*, 186 W.Va. 496, 497–98, 413 S.E.2d 151, 152–53 (1991) (*Hardy I*) for a description of the initial facts and original divorce order. In *Hardy I*, we remanded the case for a determination of how much of Mr. Hardy's $573,000 personal injury award was for his personal injury (separate or nonmarital property) and how much was for economic loss (marital property). The current appeal arose from the circuit court's decision on remand.

On remand, after several hearings, the family law master recommended considering $26,500 annually as Mr. Hardy's lost wages. The family law master noted that she had reviewed several portions of the Hardys' personal injury suit, including the testimony of two experts. Based on a $26,500 annual

---

**1.** Recently in *Banker v. Banker*, 196 W.Va. 535, 546, 474 S.E.2d 465, 476 (1996), we noted that in W.Va.Code 48–2–15 (1993), the Legislature's use of the word "maintenance" referred to and included "alimony."

salary for the period of August 1982 (date of injury) through March 1987 (date of separation), the family law master found Mr. Hardy's total lost wages totaled $123,490. The family law master's recommended decision did not address any question of credit for offsetting payments for Social Security, disability insurance, attorneys' fees, or taxes.[2] The family law master recommended that Ms. Hardy be paid $100 per month in additional maintenance/alimony. The circuit court awarded Ms. Hardy the marital residence and ordered Mr. Hardy to "pay and discharge the debts owed on the former marital residence as an incident of alimony to the Plaintiff...." (At the time of separation, the balance due on the mortgages for the marital residence totaled about $35,000.) None of the applicable hearings before the family law master has been transcribed and none was designated as part of the record by Mr. Hardy, the appellant. Mr. Hardy did include a stipulation, filed March 12, 1996, which states, in pertinent part:

Beginning almost immediately, Mr. Hardy began to receive disability payments to replace his lost income from two sources:

(a) Monthly disability payment from Safeco Insurance Company of $780.00 per month.

(b) Monthly disability payment from Social Security Administration of $570.90 per month.

Mr. Hardy supplemented the record by including a memorandum he filed with the circuit court on November 13, 1992, which raised the offsetting payments issue before the family law master. See note 2 for a discussion of the issues raised below.

Mr. Hardy filed exceptions to the family law master's recommended decision arguing that because of his monthly Social Security and disability insurance payments, there was no diminution of the marital estate, especially when attorneys' fees, taxes and other deductions are considered. See note 2 for a discussion of the issues raised before the family law master. Also in his exceptions to the family law master's recommended decision, Mr. Hardy alleged that under factors of *Molnar v. Molnar*, 173 W.Va. 200, 314 S.E.2d 73 (1984), Ms. Hardy is not entitled to maintenance/alimony.[3] Ms. Hardy did not file any exceptions with the circuit court to the family law master's recommended decision.

After a hearing[4], the circuit court affirmed the family law master's recommendation that of Mr. Hardy's $573,000 award, $123,490 (four years and eight months multiplied by $26,500 annually) be considered as Mr. Hardy's lost wages. The circuit court order did not specifically address the exceptions raised by Mr. Hardy concerning credit for Social Security and insurance disability payments, attorneys' fees, taxes and other deductions. The circuit court reversed the family law master's recommendation that Ms. Hardy be

2. The parties agree that during the original hearings before the family law master, that is the hearings prior to remand, Mr. Hardy testified that he was paid some Social Security benefits and some insurance benefits. During oral argument, James St. Clair, Esq., Mr. Hardy's lawyer, said that the offsetting payment issue was before the family law master because of Mr. Hardy's previous testimony. After oral argument, Mr. St. Clair moved this Court to supplement the record with a copy of a "Defendants Memoranda" [sic] filed on November 13, 1992, which raised the issue of credit for the Social Security and disability insurance payments received by Mr. Hardy. By order entered on June 3, 1996, this Court granted the motion and ordered the record supplemented. Kenneth Fisher, Esq., Ms. Hardy's lawyer, maintained that although Mr. Hardy had testified generally that he had received some benefits, the offsetting payment issue was presented for the first time to the circuit court in Mr. Hardy's exceptions to the family law master's recommended decision.

Based on the record as supplemented, we find that the credit/offset issue for Social Security and disability insurance payments was raised before the family law master. However, neither the parties' stipulation nor the "Defendants Memoranda" [sic] provided any evidence of withholding taxes or attorneys' fees.

3. *Molnar v. Molnar*, 173 W.Va. at 204, 314 S.E.2d at 77, lists the following "six criteria relating to the setting of alimony ...: (1) the financial resources of the parties, (2) the time necessary for the dependent spouse to acquire job skills, (3) the parties' accustomed standard of living, (4) the duration of the marriage, (5) the age and health of the dependent spouse, and (6) the needs of the supporting spouse. (Footnote omitted.)"

4. Similar to the hearings before the family law master, the hearing before the circuit court was not transcribed and was not part of the record designated by Mr. Hardy, the appellant.

granted maintenance/alimony of $100 monthly, stating, in pertinent part:

> The Court finds that the alimony recommended by the Family Law Master to be paid to Plaintiff in the sum of One Hundred Dollars ($100.00) per month is a minimal allowance and, as such, alimony to Plaintiff will be denied.

On appeal, Mr. Hardy alleges that the circuit court erred in failing to find that because of his supplemental income, especially considering attorneys' fees and taxes, the marital estate was not diminished, and the circuit court erred in failing to credit that income against the lost wages awarded in his personal injury case. In a cross-assignment of error, Ms. Hardy contends that the circuit court erred in refusing to adopt the family law master's recommendation granting her a $100 per month maintenance/alimony payment.

## II.

### STANDARD OF REVIEW

■ Two different standards of review are applied in this case because of the different procedural postures of the two issues on appeal. Because the circuit court adopted the family law master's recommendations regarding lost wages, we apply the standard expressed in Syl. pt. 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), which states:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly

erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

*In accord* Syl. pt. 1, *State, Dept. of Health v. Robert Morris N.*, 195 W.Va. 759, 466 S.E.2d 827 (1995); *Carter v. Carter*, 196 W.Va. 239, 244, 470 S.E.2d 193, 198 (1996).

■ However, on the issue of maintenance/alimony, the circuit court did not adopt the family law master's recommendations, and therefore, we must determine whether the circuit court gave proper deference to the factual findings and recommendations of the family law master as required in Syl. pt. 1, *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995), which states:

> A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard.

*In accord* Syl. pt 1, *Banker v. Banker, supra* note 1. *See* W.Va.Code 48A–4–20(c) (1993).[5] *Stephen L.H. v. Sherry L.H.* and its progeny require substantial deference be given to a family law master's factual findings and recommendations: first, when the findings and recommendations are supported by substantial evidence found in the record, which is considered as a whole; and, second, when the findings and recommendations are based upon a correct application of the law. In Syl. pt. 4, in part, of *Stephen L.H. v. Sherry L.H.*, we noted that "a circuit court may not substitute its own findings of fact for those of a family law master merely because it disagrees with those findings."

In *Banker v. Banker*, 196 W.Va. at 541, 474 S.E.2d at 471 we noted: "In determining whether the family law master correctly ap-

---

**5.** W.Va.Code 48A–4–20(c) (1993) states:

> The circuit court shall examine the recommended order of the master, along with the findings and conclusions of the master, and may enter the recommended order, may recommit the case, with instructions, for further hearing before the master or may, in its discretion, enter an order upon different terms, as the ends of justice may require. The circuit court shall not follow the recommendation, findings and conclusions of a master found to be:

> (1) Arbitrary, capricious, an abuse of discretion or otherwise not in conformance with the law;
> (2) Contrary to constitutional right, power, privilege or immunity;
> (3) In excess of statutory jurisdiction, authority or limitations or short of statutory right;
> (4) Without observance of procedure required by law;
> (5) Unsupported by substantial evidence; or
> (6) Unwarranted by the facts.

plied the law, our review, as well as the circuit court's review, is *de novo.*" *See* Syl. pt. 1, *Burnside v. Burnside, supra.*

Mindful of these standards of review, we address the issues appealed in this case: considering, first, the offsetting payments issue; and, second, the maintenance/alimony issue.

## III.

## DISCUSSION

### A. Economic Loss To the Marital Estate

▋ In *Hardy I,* we held that the purpose of a personal injury award determined whether the award, or any portion thereof, was part of the marital estate. We noted that if a personal injury award's "purpose is to compensate an individual for pain, suffering, disability, disfigurement, or other debilitation of the mind or body ... [the] award constitutes the separate nonmarital property of the injured spouse." Syl. pt. 1, in part, *Hardy I.* However, when the purpose of a personal injury award is to compensate for economic loss, the award, or portion thereof, is marital property. Syl. pt. 2 of *Hardy I* states:

> Economic losses, such as past wages and medical expenses, *which diminish the marital estate* are distributable as marital property when recovered in a personal injury award or settlement. (Emphasis added.)

▋ In this case, the family law master determined that $123,490 of Mr. Hardy's $573,000 personal injury award were lost wages. Neither party appealed this apportionment. However, in his exceptions to the family law master's recommendations, Mr.

Hardy argued that the marital estate was not diminished because of wage replacement by Social Security and disability insurance, especially when withholding taxes and attorneys' fees are considered. However, neither the family law master nor the circuit court addressed the offset issue. Although some testimony was presented to the family law master concerning Mr. Hardy's income from these sources, no evidence concerning withholding taxes appears to have been presented below and the record indicates that the issue of attorneys' fees was not raised before the family law master.

#### 1. Wage Replacement

Ms. Hardy urges us to revisit *Hardy I* by maintaining that under W.Va.Code 48–2–1(e)(1992), marital property includes all "earnings acquired by either spouse during a marriage." [6] According to W.Va.Code 48–2–1(c)(1992), earnings include "compensation paid or payable for personal services...." [7] Ms. Hardy contends that all of Mr. Hardy's earnings, including income replacement payments and monies awarded in a personal injury suit for wage replacement, are marital property.

However, Ms. Hardy's argument was rejected in *Hardy I* because of the unique nature of a personal injury award. In *Hardy I,* 186 W.Va. at 498–99, 413 S.E.2d at 153–54, we considered the statutory definitions of marital and separate property and then we discussed the costs to the marital estate of a personal injury. We noted that "[n]either statute contains any presumption with regard to the characterization of personal injury awards." 186 W.Va. at 499, 413 S.E.2d at 154. In adopting a "analytical, or purpose,

---

**6.** W.Va.Code 48–2–1(e) (1992) states, in pertinent part:

> (e) "Marital property" means:
> (1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with

the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property shall not include separate property as defined in subsection (f) of this section....

**7.** W.Va.Code 48–2–1(c) (1992) states, in pertinent part:

> "Earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

approach ... [we drew] a distinction between the economic loss suffered by the marital partnership and the economic and personal loss suffered by each individual spouse." 186 W.Va. at 499, 413 S.E.2d at 154. In order to assure that any compensation received as a result of a personal injury suit was allocated based on economic loss, we held that losses which diminished the marital partnership should be marital property. *See Unkle v. Unkle*, 305 Md. 587, 505 A.2d 849, 853 (1986)(focus should be "upon the costs incurred by the couple as a result of the injury and any diminution"). This concept was stated in Syl. pt. 2 of *Hardy I* which limited marital property to economic losses, "which diminish the marital estate."

In essence, Ms. Hardy seeks for the marital estate more than any economic loss it suffered; rather, Ms. Hardy argues that the marital estate should be benefited by the personal injury suit. In *Hardy I*, we recognized that there was "no equitable reason for that [the uninjured] spouse to profit from his or her ex-mate's recompense for suffering.... The only damages truly shared are ... the diminution of the marital estate by loss of past wages or expenditure of money for medical expense. *Any other apportionment is unfair distribution*. (Emphasis added.)" 186 W.Va. at 500, 413 S.E.2d at 155, *quoting*, *Amato v. Amato*, 180 N.J.Super. 210, 434 A.2d 639, 643 (1981).

We find no justification for rejecting our holding in *Hardy I*, and therefore, we reject Ms. Hardy's argument against compensating the marital estate only to the extent that it has been diminished. *See* Syl. pt. 2, *Hardy I*.

In this case, although the family law master determined how much of Mr. Hardy's personal injury award was for lost wages, she failed to determine if this economic loss, namely Mr. Hardy's wages, had diminished the marital estate. Some evidence was presented concerning Social Security and disability insurance payments. However, the record is not clear on when these payments were received and in what amounts. The stipulation concerning the receipt of the payments was not specific enough to allow a

simple calculation. *See supra* section I for the stipulation.

In conclusion, we find that the family law master and the circuit court were clearly erroneous in failing to consider Mr. Hardy's payments from Social Security and disability insurance in determining if the marital estate was diminished. On remand, the process for determining the economic loss to the marital estate requires: first, the determination of the Social Security and disability insurance payments actually received by Mr. Hardy; and second, the deduction of that amount from the $123,490 Mr. Hardy recovered for lost wages in his personal injury suit. Mr. Hardy has the burden of providing information about the Social Security and disability insurance payments he actually received.

### 2. Miscellaneous Deductions

On appeal, Mr. Hardy urges us to offset costs for various miscellaneous deductions including attorneys' fees, federal and State income taxes and others in determining the economic loss to the marital estate.

■ However in this case, nothing in the record indicates that the issue of attorneys' fees was presented to the family law master and we decline to address that issue for the first time on appeal. *See Whitlow v. Bd. of Educ. of Kanawha County*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993); *Shrewsbury v. Humphrey*, 183 W.Va. 291, 395 S.E.2d 535 (1990); *Cline v. Roark*, 179 W.Va. 482, 370 S.E.2d 138 (1988). The philosophy behind declining to address objections raised for the first time on appeal was explained in *Wimer v. Hinkle*, 180 W.Va. 660, 663, 379 S.E.2d 383, 386 (1989) (considering the necessity of objecting on an evidentiary issue) as part of a design "to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error."

■ Mr. Hardy also seeks offsets for federal and State income taxes and other unspecified withholding items. The record, as supplemented, indicates that Mr. Hardy requested that the family law master consider federal and State income taxes and other withholdings as offsets in determining the

economic loss to the martial estate.[8] However, no direct information was presented on the amounts of federal and State income taxes and no information was given about the "other withholding." In Syl. pt. 3 of *Hardy I*, we placed the burden of proof on the party seeking a nonmarital classification. Syl. pt. 3 of *Hardy I* states: "The burden of proving the purpose of part or all of a personal injury recovery is on the party seeking a nonmarital classification."

Because of the lack of information about the "other withholding" and the federal and State income taxes, we find that these items were not fairly raised below. Mr. Hardy's failure to present these facts below does not automatically entitle him to a second opportunity to present these facts on appeal or to be allowed to present them on remand. The need for judicial economy within the family law master system precludes allowing everyone multiple opportunities for factual development, especially for the party who invited the error. *See Comer v. Ritter Lumber Co.*, 59 W.Va. 688, 689, 53 S.E. 906, 907 (1906) (the party inviting "the error . . . must accept its results"); Syl. pt. 1, *McElhinny v. Minor*, 91 W.Va. 755, 114 S.E. 147 (1922) ("appellant cannot complain of errors . . . which he alone caused"). Recently in *Young v. Young*, 194 W.Va. 405, 460 S.E.2d 651 (1995) (per curiam), we held that a circuit court's remand to the family law master was erroneous because the alleged errors were invited by the complainant's nonappearance at the proceedings before the family law master. Syl. pt. 21 of *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966) states:

> A judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal.

*In accord* Syl. pt. 4 *State v. Johnson*, 197 W.Va. 575, 476 S.E.2d 522 (1996). *See State, Dept. of Health v. Robert Morris N.*, 195 W.Va. at 766, 466 S.E.2d at 834 (recognizing the "need for judicial economy in family issues, as well as . . . [the need to avoid] fundamental unfairness"); Syl. pt. 2, *State v. Bowman*, 155 W.Va. 562, 184 S.E.2d 314 (1971).

Given this case's record, we find no justification for abandoning our longstanding policy of not reversing an error invited by the party seeking relief, especially when that party, as in this case, has the burden of proof. *See* Syl. pt. 3, *Hardy I*. Because Mr. Hardy's additional offset claims for attorneys' fees, taxes and other withholdings were either not raised or raised but not sufficiently developed, we find that additional consideration of them is barred.

In conclusion on remand, although the circuit court is directed to consider the wage replacements received by Mr. Hardy from Social Security and disability insurance, no additional consideration for attorneys' fees, taxes or other withholdings is justified by this record. In this case, the determination of economic loss to the marital estate by the circuit court should be a simple computation of subtracting the offset payments actually received from $123,490, with the remaining amount considered to be marital property, which is subject to equitable distribution.

### B. Maintenance/Alimony

W.Va.Code 48–2–16(b) (1984) lists sixteen (16) factors that should be considered "in determining the amount of alimony." The final factor allows the consideration of "[s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimo-

---

**8.** Mr. Hardy's memorandum filed with the circuit court on November 18, 1992 lacks specific information about items withheld from Mr. Hardy's wages. Mr. Hardy's memorandum stated: "It is estimated that his federal and state income tax and other withholding would approximate thirty (30) percent." On appeal to this Court, attached to Mr. Hardy's brief was a table titled: WEST VIRGINIA ADJUSTED GROSS TO AFTER TAX INCOME CONVERSION TABLE, After Tax Incomes for Custodial and Noncustodial Par-

ents and Different Numbers of Children (Non–Shared Custody Case and Split Custody Case) and dated June 10, 1994. Underlined on this table in the "Monthly Adjusted Gross Income Range" column was "1425.00–1474.99," and in the "Noncustodial Parent After Tax Income" column was "1172.07." Nothing in the record indicates that this table on an unrelated issue concerning taxes for child support was presented below.

ny. . . ."[9] In the case *sub judice,* the family law master recommended maintenance/alimony of $100 per month. The family law master noted that although Ms. Hardy was "a real estate salesperson and was a licensed nurse . . . she was unable to preform those jobs at the time of the original hearings due to an injury received relating to her employment as a nurse." The circuit court, without addressing the factual findings of the family law master or the factors of W.Va.Code 48–2–16(b) (1984), denied Ms. Hardy the $100 per month alimony because "the sum of One Hundred Dollars ($100.00) per month is a minimal allowance and, as such, alimony to the Plaintiff will be denied."

█ We have long held that "[t]he decision to grant or deny alimony is reviewed by this Court for an abuse of discretion." *Banker v. Banker,* 196 W.Va. at 548, 474 S.E.2d at 478. The Syllabus of *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977) states:

> Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.

9. W.Va.Code 48–2–16(b) (1984) lists the following factors for consideration in determining the amount of maintenance/alimony:

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two [§ 48–2–32] of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance;

(6) The ages and the physical, mental and emotional condition of each party;

In accord *Carter v. Carter,* 196 W.Va. at 244, 470 S.E.2d at 198; Syl. pt. 2, *Wood v. Wood,* 190 W.Va. 445, 438 S.E.2d 788 (1993); Syl. pt. 8, *Wyant v. Wyant,* 184 W.Va. 434, 400 S.E.2d 869 (1990); Syl., *Luff v. Luff,* 174 W.Va. 734, 329 S.E.2d 100 (1985).

In *Banker v. Banker,* we gave the following explanation of the three principal ways through which an abuse of discretion might arise:

> An abuse of discretion occurs in three principal ways: (1) when a relevant factor that should have been given significant weight is not considered; (2) when all proper factors, and no improper ones, are considered, but the family law master in weighing those factors commits a clear error of judgment; and (3) when the family law master fails to exercise any discretion at all in issuing the order.

*Banker v. Banker,* 196 W.Va. at 548, 474 S.E.2d at 478.

In this case, the family law master awarded maintenance/alimony because of Ms. Hardy's financial need and made a specific finding that Ms. Hardy was unable to work because of an injury she had received in an unrelated matter. In *Burnside v. Burnside,* 194 W.Va. at 275, 460 S.E.2d at 276, we noted that "[f]indings of fact are adequate only if

(7) The educational qualifications of each party;

(8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(9) The anticipated expense of obtaining the education and training described in subdivision (8) above;

(10) The costs of educating minor children;

(11) The costs of providing health care for each of the parties and their minor children;

(12) The tax consequences to each party;

(13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(14) The financial need of each party;

(15) The legal obligations of each party to support himself and herself and to support any other person; and

(16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.

they are sufficient to indicate the factual basis for the ultimate conclusion." Without addressing the specific finding on which the award of maintenance/alimony was based, the circuit court denied Ms. Hardy maintenance/alimony because $100 per month "is a minimal allowance." The circuit court provided no further explanation. *See* Syl. pt. 1, *Brown v. Gobble*, 196 W.Va. 559, 474 S.E.2d 489 (1996) (outlining when "deference accorded to a circuit court sitting as factfinder may evaporate"). The essence of the circuit court's denial of maintenance/alimony becomes a self-fulfilling prophesy when a minimal award of $100 per month is reduced to nothing. *Nothing is more emphatic than zero.*

Considering the limited record, we find that the family law master did not abuse her discretion in awarding Ms. Hardy $100 per month for maintenance/alimony. In *Banker v. Banker*, 196 W.Va. at 546, 474 S.E.2d at 465 (discussing the fifth criterion of W.Va. Code 48–2–16(b) (1984), *see* note 9 for the Code provisions), we noted that the statute requires a reasonable analysis and should not be based on mere assumption. In *Stephen L.H. v. Sherry L.H., supra,* we noted that "a circuit court may not substitute its own findings of fact for those of a family law master merely because it disagrees with those findings." Syl. pt. 4, in part, *Stephen L.H. v. Sherry L.H.*

Given the reason provided in the circuit court's order, we find that the circuit court abused its discretion in failing to adopt the family law master's recommendation that Ms. Hardy be granted $100 per month in maintenance/alimony.

For the above stated reasons, the decision of the Circuit Court of Wayne County is reversed and this case is remanded to the circuit court for proceedings consistent with this opinion.

Reversed and remanded.