333 S.E.2d 89

**Basil KELLER, Committee, etc.**

v.

**Woodrow HARTMAN, et al.**

No. 16229.

Supreme Court of Appeals
of West Virginia

Submitted Jan. 29, 1985.

Decided July 11, 1985.

**420**

Jerry D. Moore & William McCoy, Jr., Franklin, for appellant.

George I. Sponaugle, II; Sponaugle, Sponaugle & Bowers, Franklin, for appellee.

McHUGH, Justice:

The plaintiff below, Basil Keller, as committee for Wayne Byrd, an incompetent, appeals from a final order entered upon a jury verdict in a declaratory judgment action. The jury found that the appellees own a right of way across a tract of land owned by Wayne Byrd. For the reasons that follow, we affirm.

I

Sam Byrd died, intestate, in 1949. At the time of his death, he owned a tract of land in Franklin, Pendleton County. Situated on the property are a house and garage, and four commercial buildings. The configuration of the structures is illustrated below:

Upon Sam Byrd's death, the real estate descended to his daughter, Leslie Byrd Keller, and his two sons, Maurice and Wayne. Maurice subsequently purchased Leslie's interest in the property, giving him a ⅔ undivided interest. In 1956, the property was partitioned as follows: Byrd's Restaurant and Hartman Furniture Store, along with Driveways A and B were owned solely by Maurice; the Clothing Store with Driveway C was owned solely by Wayne; and the balance, an L-shaped tract, upon which was situated the house, garage, and storage building, remained unpartitioned, Maurice owning a ⅔ undivided interest and Wayne owning a ⅓ undivided interest.

When Maurice died in 1968 his interests descended to his wife and sole heir, Elsie.

In 1978, Elsie sold the furniture store to Alice and Woodrow Hartman (appellees), who had leased the building since 1953. The Hartmans also leased the storage building, and they continued to lease said building after they purchased the furniture store. The 1978 deed conveying the furniture store to the Hartmans also provided:

> The party of the first part [Elsie Byrd] also grants and conveys to the party of the second part [Hartmans] a right-of-way thirty (30) feet in width across her undivided two-thirds (⅔) interest in the real estate owned by her and located East of and between South Branch Street, the location of said right-of-way shall be the same entrance which the parties of the second part now use for

the purpose of ingress and egress to the real estate herein conveyed.

From the trial testimony, it is clear that the right of way is located to the north of and contiguous with the storage building, and it runs from South Branch Street to the eastern end of the furniture store tract.

In 1981, Elsie conveyed her ⅔ undivided interest in the L-shaped tract to Wayne. The 1981 deed provided: "This conveyance is made subject to any and all rights of ways [sic] and easements affecting the real estate herein conveyed."

In the following year, Wayne Byrd suffered a stroke. The County Commission of Pendleton County found that Wayne was unable to manage his business affairs and was therefore incompetent. Leslie's husband, Basil S. Keller (the appellant), was appointed committee for Wayne Byrd, on December 27, 1982, pursuant to *W.Va. Code,* 27–11–1 [1981]. On behalf of Wayne, the appellant instituted a civil action against the Hartmans, seeking a declaratory judgment to declare null and void Elsie's conveyance of the right of way to the Hartmans. The Hartmans answered, setting forth the alternative defenses that they acquired the right of way either by grant from Elsie Byrd or by prescription through their continuous, exclusive, uninterrupted, adverse, nonpermissive use of said right of way, under a bona fide claim of right, since 1953.

At trial both Basil and Leslie Keller testified that the Hartmans' use of the right of way was permissive and that the Hartmans were given such permission at the time the furniture store building was first leased.

Woodrow Hartman testified that he leased the furniture store building since 1953. There was no written lease. Hartman testified further that he never asked for permission to use the right of way; that the way was used to bring truckloads of furniture and other merchandise to the

furniture store and for employee parking [1]; that the driveway on the north side of the building was too narrow to allow access by truck; that Wayne never objected to the Hartmans' using the way; and that Wayne knew that Elsie Byrd had granted the Hartmans a right of way when she sold them the building.

On cross-examination, Hartman testified that he knew that Elsie Byrd owned a ⅔ interest and Wayne Byrd a ⅓ interest in the property over which the right of way was granted; that he did not know whether Elsie had a legal right to convey the right of way; that he saw Wayne Byrd "practically every day"; and that when faced with the knowledge that Elsie had granted the right of way, Wayne said to Hartman, "Woody, I don't give a dam [sic]." Alice Hartman's testimony corroborated her husband's testimony.

The appellant offered Richard Homan as a rebuttal witness to testify that Wayne Byrd neither consented to nor acquiesced in the granting of the right of way to the Hartmans. Objection was made on the grounds that such testimony was hearsay and not proper rebuttal. After the appellant vouched the record, the objection was sustained on both grounds, and the jury was instructed to disregard all of Homan's testimony.

The jury returned a general verdict for the Hartmans, finding that they have a 30-foot right of way across the property of Wayne Byrd. The verdict did not specify whether the right of way was obtained by grant or prescription, although the jury was instructed on both theories.

The appellant contends that the circuit court erred in not entering a judgment on the pleadings; not directing a verdict in favor of the plaintiff; permitting testimony by the defendants regarding a conversation between one of the defendants and Wayne Byrd, in violation of the Dead Man's Stat-

1. There was evidence that Basil Keller told Hartman's employees not to park in the right of way and offered to lease them parking spaces for $9 per month.

ute, *W.Va.Code*, 57-3-1 [1937]; disallowing the testimony of a witness in rebuttal; and giving two defense instructions, over objection, that instructed the jury on the issues of acquisition of a right of way by prescription or by deed.

## II

We find no merit in the challenges to the trial court's evidentiary rulings.

The appellant objected to Hartman's testimony as to Wayne Byrd's statement about the disputed right of way on grounds that such testimony was prohibited by the Dead Man's Statute, *Code*, 57-3-1 [1937]. That statute provides, as pertinent here: "No party to any action, suit or proceeding ... shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination insane or lunatic, against the ... committee of such insane person or lunatic ...."

According to our rules of statutory construction, "[t]he words 'insane person' include everyone who is idiot, lunatic, non compos, or deranged." *Code*, 2-2-10(n) [1973].

■ The trial judge allowed the challenged testimony to remain in the record, basing his ruling on the belief that Wayne Byrd was not insane, and that the statute was therefore not applicable.

In determining that Wayne Byrd was incompetent, the Pendleton County Commission found that he was unable to manage his business affairs. Such a finding, while justifying the appointment of a committee, does not demonstrate that the person found incompetent is also insane, within the meaning of the statute. This case is clearly distinguishable from *The Calhoun County Bank v. Ellison*, 133 W.Va. 9, 54 S.E.2d 182 (1949), where this Court held that a person who had been adjudged "mentally incompetent" by a mental hygiene commissioner was "insane" within the meaning of the Dead Man's Statute.

■ The Dead Man's Statute has been narrowly construed to permit the introduction of relevant testimony, unless clearly excluded by the language and purpose of the statute. We held in syl. pt. 5 of *Sayre v. Whetherholt*, 88 W.Va. 542, 543, 107 S.E. 293 (1921):

> The exception in sec. 23 of ch. 130 of the Code [now *Code*, 57-3-1] excluding witnesses from the relief from disability on the ground of interest given by that section, under certain specified conditions and circumstances, is strictly construed, and does not preclude the testimony of any witness that does not clearly come within its terms.

There was no objection to this testimony on other grounds. There was no error in ruling it admissible.

■ Nor did the court err in striking the testimony of Mr. Homan. Although appellant contends that Homan's testimony was not hearsay, this contention is based solely on the nature of the questions posed in which Homan was not asked directly about conversations. We look, however, to Homan's answers, made in vouching the record, almost all of which relate statements purportedly made by Wayne Byrd. There was no error in striking this testimony on hearsay grounds, since it clearly was inadmissible. *Salerno v. Manchin*, 158 W.Va. 220, 213 S.E.2d 805 (1974).

## III

■ The legal requisites for acquisition of an easement by prescription are well settled.

To establish an easement by prescription there must be continued and uninterrupted use or enjoyment for at least ten years, identity of the thing enjoyed, and a claim of right adverse to the owner of the land, known to and acquiesced in by him; but if the use is by permission of the owner, an easement is not created by such use.

Syl. pt. 1, *Town of Paden City v. Felton*, 136 W.Va. 127, 66 S.E.2d 280 (1951).

The open, continuous and uninterrupted use of a road over the land of another, under *bona fide* claim of right, and without objection from the owner, for a period of ten years, creates in the user of such road a right by prescription to the continued use thereof. In the absence of any one or all of such requisites, the claimant of a private way does not acquire such way by prescription over the lands of another.

Syl. pt. 1, *Holland v. Flanagan*, 139 W.Va. 884, 81 S.E.2d 908 (1954).

■ "The burden of proving an easement rests on the party claiming such right and must be established by clear and convincing evidence." Syl. pt. 1, *Berkeley Development Corp. v. Hutzler*, 159 W.Va. 844, 229 S.E.2d 732 (1976).

■ The appellant contends that the appellees could not acquire an easement because they were merely lessees during the alleged period of prescription. The general rule with respect to acquisition by a lessee of an easement by prescription is that "[o]ne in possession of land as a tenant at will or for years cannot acquire for himself an easement of way over the lands of another," 25 Am.Jur.2d, Easements and Licenses § 40, *see also* 28 C.J.S. Easements § 8.

■ The appellees concede the general rule, but they contend that their adverse use inured to the benefit of their landlord. In the leading case of *Deregibus v. Silberman Furniture Co.*, 121 Conn. 633, 186 A. 553, 105 A.L.R. 1183 (1936), it was held that adverse use by a lessee of a way appurtenant to the leasehold premises inures to the benefit of the lessor only where the way is included, expressly or impliedly in the lease.

In the present case, there was no written lease, and the record is devoid of evidence that the claimed easement was included in the oral lease of the furniture store or of the storage building. Therefore, any use by the Hartmans would not benefit their landlords.

■ It is fundamental that "no person can have an easement on his own property ..." *Stuart v. Lake Washington Realty Corp.*, 141 W.Va. 627, 640, 92 S.E.2d 891 (1956). The essence of an adverse use is that such use be made of the land of another. *Holland v. Flanagan, supra; Berkeley Development Corp. v. Hutzler, supra.*

■ For the first three years of the claimed prescriptive period, the leased buildings and the driveway were parts of a single tract of land. The landlords and the owners of the way were identical.

The storage building and the driveway were at all times part of the same tract. Therefore, no easement appurtenant to the storage building could have been created.

■ Subsequent to the partition in 1956, the appellees' landlords in the furniture store—first Maurice and later Elsie—continued to have a ⅔ undivided interest in the "L"-shaped tract. Any use of the driveway by the appellees could not inure to the benefit of their lessors because the lessors could not acquire the right to use the driveway adverse to themselves.

For all the foregoing reasons, we conclude that the appellees did not acquire an easement by prescription.

## IV

The appellant contends that the 1978 deed conveying the easement to the appellees was void and thus incapable of being later ratified.[2]

■ This Court has held that a conveyance of land by one cotenant without consent of the other cotenant(s) is not void

---

**2.** Although by the terms of the deed, the easement that Elsie Byrd purported to convey ran across only her ⅔ undivided interest, it nevertheless affected the property owned in common by her and Wayne Byrd. *See* 2 Tiffany, The Law of Real Property § 456 (3d ed. 1939). As a practical matter, the easement ran across the common property.

as between the grantor and grantee. *Boggess v. Meredith*, 16 W.Va. 1, 27–29 (1879); *Worthington v. Staunton*, 16 W.Va. 208, 241–2 (1880).

The general rule regarding grants of easements by cotenants is found at 86 C.J.S., Tenancy in Common § 111: "Ordinarily a tenant in common cannot, as against his cotenants and without their precedent authority or subsequent ratification, impose an easement on the common property in favor of third persons; but the easement may be binding on the undivided interest of the granting cotenant." *See also LDDC, Inc. v. Pressley*, 71 N.C.App. 431, 322 S.E.2d 416, 417–18 (1984); *Elliott v. Elliott*, 597 S.W.2d 795, 802 (Tex.Civ.App.1980), *citing* C.J.S., *op. cit.; Greater Baton Rouge Port Commission v. Morley*, 232 La. 87, 95, 93 So.2d 912, 915 (1957) (based on La. Civil Code); 20 Am.Jur.2d, Cotenancy and Joint Ownership § 103.

We have recognized that a cotenant who did not join in the original conveyance may affirm or ratify the act of another cotenant "in carving out a portion of the common estate." *Mauzy v. Nelson*, 147 W.Va. 764, 770, 131 S.E.2d 389, 393, 97 A.L.R.2d 732, 738 (1963). In syl. pts. 5 and 7 of *Worthington v. Staunton, supra*, this Court held:

> A deed from a co-tenant of a part of the land held in common, describing it by metes and bounds, cannot in any way operate to the prejudice of the other tenants in common. They have the right to have the land partitioned unaffected by such deed.
>
> Such a deed will become operative and pass the land to the grantee by metes and bounds, if the other tenants in common, before partition, confirm and ratify it, and after partition, if that portion is allotted to the purchaser thereof; and in either case such deed will be binding on both the grantor and grantee.

▇▇ Our holdings with respect to conveyances by one cotenant, and subsequent ratification by the remaining cotenant(s), apply with equal force to the grant of an easement. *See Saulsberry v. Saulsberry*, 121 F.2d 318 (6th Cir.1941). We conclude from the foregoing authorities that where a tract of land is owned by tenants in common and one tenant grants an easement to a third party, which by the express terms of the grant, purportedly conveys only the grantor's undivided interest, such grant is effective to create an easement on the other tenants' interest, if the other tenant(s) consent to or subsequently ratify the conveyance.

▇▇ Upon review of the record we find that the evidence was sufficient to present a jury question as to whether Wayne Byrd consented to or ratified the conveyance of the easement. The jury could reasonably infer consent or ratification from testimony regarding Wayne Byrd's silence, his response to the conveyance of the easement by Elsie Byrd or his acceptance of the 1981 deed. We have carefully examined and considered the instructions given to the jury on this issue and perceive no error in them.

In syllabus point 6 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), we held:

> Where a jury returns a general verdict in a case involving two or more liability issues and its verdict is supported by the evidence on at least one issue, the verdict will not be reversed, unless the defendant has requested and been refused the right to have the jury make special findings as to his liability on each of the issues.

More generally, our research in *Orr v. Crowder* led to the following conclusion: "Although there is a split of authority, we believe that a majority of courts which have recently considered the issue have concluded that where a jury returns a general verdict involving two or more issues and its verdict is supported as to at least one issue, the verdict will not be reversed.

(citations omitted)" 173 W.Va. at 349, 315 S.E.2d at 607.

 In this case we are faced with a situation similar to that in *Orr v. Crowder*, because the jury may have determined ownership of the easement on either of two theories, one of which was not supported by the law. There were no special interrogatories or special verdict forms. We therefore apply the "two-issue rule" and affirm the judgment order entered upon the jury's verdict.[3]

Affirmed.

---

**3.** In view of the reasons supporting our affirmance of the judgment in favor of the appellees, it is unnecessary to discuss the lower court's denial of the appellant's motions for judgment on the pleadings or a directed verdict.