445 S.E.2d 229

Michael G. JAMISON and Mary J. Jamison, his wife; Earl L. Jamison and Nora Lea Jamison, his wife; Lane Godfrey and Mary Godfrey, his wife; and Larry Heater, Plaintiffs Below, Appellees,

v.

The WALDECK UNITED METHODIST CHURCH, an Ecclesiastical Body, and Ruth Snyder, Allen Marple, Loy Byrd, Jr., Howard Wylie, Ruby Queen, Mary Marple, Patrick West, Ramona West, and Denver Turner, as Trustees of the Waldeck United Methodist Church, Defendants Below,

Ruth Snyder, Allen Marple, Loy Byrd, Jr., Howard Wylie, Ruby Queen, Mary Marple, Patrick West, Ramona West, and Denver Turner, as Trustees of the Waldeck United Methodist Church, Appellants.

No. 21963.

Supreme Court of Appeals of West Virginia.

January 1994 Term.

Submitted May 3, 1994.

Decided May 27, 1994.

W.T. Weber, Jr., W.T. Weber, III, Weston, for appellees.

John R. Haller, Haller & Wagoner, Weston, for appellants.

PER CURIAM:

This appeal is brought by the defendants below and appellants herein, the Trustees of the Waldeck United Methodist Church (Church). The plaintiffs below and the appellees herein are certain persons who claim a prescriptive easement across the Church's property as a means of ingress and egress to and from certain adjoining property. The appellants appeal the final order of the Circuit Court of Lewis County, dated April 7, 1993, that denied their motion to set aside the jury verdict granting the prescriptive easement to four of the named plaintiffs and denied their motion to enter a judgment notwithstanding the verdict.

## I.

### FACTS

The Church's property fronts U.S. Route 33 and 119 in Lewis County. From the highway, a roadway exists across the Church's property to access the church building, its parking area, and its cemetery. At some point, this roadway separates into a "Y" with one branch continuing on the Church's property and the other branch bearing towards the properties of the plaintiffs, Lane and Mary Godfrey and Michael G. and Mary J. Jamison. The beginning section of the Church's roadway is blacktopped pavement. In early 1982, the section of roadway leading to the Godfrey and Jamison properties was grass and dirt. At trial, Mr. Jamison testified that he spread gravel over the area, and he took care of it during the time he lived on his property.

Michael Jamison acquired his property from his parents, Earl L. and Nora Lea Jamison,[1] who owned approximately seventeen acres of land that adjoined, in part, the Church's property. On March 2, 1982, Earl and Nora Lea deeded to Michael Jamison a one-acre tract of land from the southwest corner of their property. Upon the one-acre tract, Michael and Mary Jamison, his wife, built a house and moved onto the property around November of 1982. Michael and Mary Jamison lived in this house until they moved in 1989. Thereafter, they rented the house to various tenants. The plaintiff, Larry Heater, was renting the house at the time this action was brought.

Although Earl and Nora Jamison do not use the Church's roadway to reach their house, the one-acre tract they deeded to their son does not front any public highways. Generally, to the north and the east, the one-acre tract adjoins the remaining property owned by Earl and Nora Jamison; to the south, it adjoins the lot owned by the plaintiffs, Lane and Mary Godfrey; and, to the west, it adjoins the Church's property. To access the one-acre tract, Michael and Mary Jamison and their tenants have relied exclusively upon the roadway across the Church's property.

The Godfreys purchased their house and approximately one-half acre of attached land from Theodore and Lisha Nash on March 3, 1982. Generally, the Godfrey property fronts U.S. Route 33 and 119 to the south, adjoins the one-acre tract owned by the Michael and Mary Jamison to the north, adjoins the Church's property to the west, and adjoins a part of Earl and Nora Jamison's property along with other property not involved in this dispute to the east.

The Godfrey house sits atop a steep embankment on the side that fronts the highway. There are steps that lead from the highway to the house. At trial, Mr. Nash testified that he built a driveway to the house, but he was unable to use it during the winter. Before he built the driveway or when the driveway was impassable, Mr. Nash stated that he either crossed the Church's property, or, at times, he parked near the main road and walked up the steps.

---

1. Earl L. and Nora Lea Jamison were originally plaintiffs, but the trial court directed a verdict against them based on the evidence that they did not use the easement. They do not appeal this decision.

Mrs. Godfrey testified that since the time she and her family have lived on their lot, they have crossed the Church's property to reach their house. Mrs. Godfrey further testified that she never asked anyone at the Church for permission to cross the property because she assumed the roadway was there for their use.

At trial, the court directed a verdict against Larry Heater because he was merely a tenant of the Jamisons. Mr. Heater does not appeal this ruling. Consequently, the Church's appeal involves only the Jamisons' and Godfreys' claims to a prescriptive easement across its property.

## II.

### THE JAMISON PROPERTY

■ We find that Michael and Mary Jamison failed to establish an easement by prescription. The elements of an easement by prescription are stated in Syllabus Point 2 of *Keller v. Hartman*, 175 W.Va. 418, 333 S.E.2d 89 (1985):

" 'The open, continuous and uninterrupted use of a road over the land of another, under *bona fide* claim of right, and without objection from the owner, for a period of ten years, creates in the user of such road a right by prescription to the continued use thereof. In the absence of any one or all of such requisites, the claimant of a private way does not acquire such way by prescription over the lands of another.' Syl. pt. 1, *Holland v. Flanagan*, 139 W.Va. 884, 81 S.E.2d 908 (1954)."

*See also* Syllabus Point 1, *Crane v. Hayes*, 187 W.Va. 198, 417 S.E.2d 117 (1992); Syllabus Point 1, *Shrewsbury v. Humphrey*, 183 W.Va. 291, 395 S.E.2d 535 (1990); Syllabus Point 2, *Norman v. Belcher*, 180 W.Va. 581, 378 S.E.2d 446 (1989).

■ The Jamisons should not have been granted the prescriptive easement because they did not present evidence that they satisfied the required ten-year period. It is well settled that it is the responsibility of the party claiming the easement to establish by clear and convincing evidence that it exists.

As we stated in Syllabus Point 2 of *Crane v. Hayes, supra*:

" ' " 'The burden of proving an easement rests on the party claiming such right and must be established by clear and convincing evidence.' Syl. pt. 1, *Berkeley Development Corp. v. Hutzler*, 159 W.Va. 844, 229 S.E.2d 732 (1976)." Syllabus Point 3, *Keller v. Hartman*, [175] W.Va. [418], 333 S.E.2d 89 (1985).' Syl. pt. 3, *Norman v. Belcher*, 180 W.Va. 581, 378 S.E.2d 446 (1989)."

Here, the suit against the Church to establish the plaintiffs' rights to a prescriptive easement was filed in the Circuit Court of Lewis County on November 13, 1992. However, the facts indicate that the Jamisons only lived on the property from 1982 until 1989, and then they began renting the property. In *Keller*, 175 W.Va. at 424, 333 S.E.2d at 95, we cited "the leading case of *Deregibus v. Silberman Furniture Co.*, 121 Conn. 633, 186 A. 553, 105 A.L.R. 1183 (1936), ... [which] held that adverse use by a lessee of a way appurtenant to the leasehold premises inures to the benefit of the lessor only where the way is included, expressly or impliedly in the lease."

■ We do not find any indication in the record that the Jamisons provided in their lease of the property the right to use the Church's roadway. Likewise, we do not find any argument in their brief that the lease was sufficient to allow a tacking of the period the property was rented to the approximately seven years that they lived on the property.[2] Thus, we conclude that the Jamisons did not prove by clear and convincing evidence that they accrued the ten years necessary to establish the prescriptive easement. We, therefore, reverse the judgment of the trial court as to its entering a verdict in favor of the Jamisons.

## III.

### THE GODFREY PROPERTY

The Godfreys present a different situation than the Jamisons because they have lived in their house continuously since March 3, 1982,

---

**2.** Although Mary Jamison did state that she evicted one tenant who misused the roadway, this testimony is insufficient to show that the use of the Church's roadway was either expressly or impliedly included in a lease. Moreover, the record indicates that it was the abuse by one or more of the Jamisons' tenants that caused the Church to place a chain across the easement.

which exceeded the ten-year period. During this entire time, they have used the Church's roadway. The Church did not object to the use of its roadway until after the ten-year period necessary for a prescriptive easement had passed. Therefore, the Godfreys fulfilled the requirements set forth in Syllabus Point 2 of *Keller v. Hartman, supra,* in that they had an " 'open, continuous and uninterrupted use of a road over the land of another . . . for a period of ten years[.]' " *Quoting* Syllabus Point 1, *Holland v. Flanagan,* 139 W.Va. 884, 81 S.E.2d 908 (1954). However, the Church argues that the Godfreys cannot obtain the prescriptive easement because the Godfreys' predecessor in title,[3] Theodore Nash, was granted permission to use the Church's roadway.[4]

■ We agree with the Church that it is well established that if a property owner grants someone permission to use a piece of land for a particular purpose, a prescriptive easement cannot be created during the time the land is so used. We stated in Syllabus Point 1, in part, of *Town of Paden City v. Felton,* 136 W.Va. 127, 66 S.E.2d 280 (1951), that "if the use is by permission of the owner, an easement is not created by such use." *See also* Syllabus Point 2, *Canei v. Culley,* 179 W.Va. 797, 374 S.E.2d 523 (1988); Syllabus, *Conley v. Conley,* 168 W.Va. 500, 285 S.E.2d 140 (1981). In the present case, however, we find that the evidence is not clear and the parties do not agree that the Church ever gave permission to either Mr. Nash or the Godfreys to use its roadway.

Mrs. Godfrey testified that she never received permission to use the Church's roadway because she always believed she had the right to use it. Mr. Nash, on the other hand, testified that he asked a neighbor by the name of Wilsie Fisher, who asked someone named "Pat," whether he could go on the Church's property. A couple of days later, Ms. Fisher called him back and said that he could use it. While testifying, Mr. Nash emphasized that the conversation occurred a long time ago, and he was recollecting it only to the best of his knowledge. Moreover, although it is unclear to this Court after carefully reviewing the testimony, the plaintiffs assert in their brief that this conversation only related to Mr. Nash receiving permission to use a part of the Church's property that was not even the subject of the litigation in this case.

■ Given the foregoing testimony, we apply our traditional rule as set out in Syllabus Point 7 of *Keister v. Talbott,* 182 W.Va. 745, 391 S.E.2d 895 (1990):

" ' "Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong." Syl. pt. 2, *French v. Sinkford,* 132 W.Va. 66, 54 S.E.2d 38 [ (1948) ].' Syllabus Point 1, *McCormick v. Hamilton Business Sys., Inc.,* 175 W.Va. 222, 332 S.E.2d 234 (1985)."

We conclude that the jury was not plainly wrong in granting the Godfreys the prescriptive easement. We find the jury reasonably could have rejected the ambiguous testimony of Mr. Nash regarding whether or not he received permission to use the roadway, and then determined that permission did not exist.

*See also Town of Paden City v. Felton,* 136 W.Va. 127, 137–38, 66 S.E.2d 280, 287 (1951) (indicating no matter when the use began or how long it lasts, a prescriptive easement will not be created if it began by permission of the owner of the servient estate, unless the person claiming the easement makes a decisive act manifesting an adverse or hostile claim).

---

3. Our case law indicates that once permission is given by the owner of a servient estate, such permission will continue unless otherwise revoked or renounced with continued use, or if there is an act indicating a hostile or adverse claim. As we stated in Syllabus Point 2 of *Faulkner v. H.P. Thorn,* 122 W.Va. 323, 9 S.E.2d 140 (1940):

"The use of a way over the land of another, permissive in its inception, will not create an easement by prescription no matter how long the use may be continued, unless the licensee, to the knowledge of the licensor, renounces the permission and claims the use as his own right, and thereafter uses the way under his adverse claim openly, continuously and uninterruptedly, for the prescriptive period."

4. The Church also claims that it permitted the Jamisons to use the roadway and, therefore, they cannot obtain a prescriptive easement. We do not need to address the facts pertaining to whether permission was given to the Jamisons because we find that they did not establish the basic requirement of using the roadway for a period of ten years.

Moreover, we also find that even if we assumed that the Church granted Mr. Nash permission to use the roadway, Mr. Nash's use was much different than the Godfreys' use. Mr. Nash only used the roadway during inclement weather when he could not go up his own driveway. On the contrary, the Godfreys used the Church's roadway as their exclusive means of ingress and egress from their property. We find that this use imposed an increased burden upon the land which was adverse to the way Mr. Nash used it.

## IV.

### CONCLUSION

In sum, we find that Michael and Mary Jamison failed to establish a right to a prescriptive easement, and Lane and Mary Godfrey did establish a right to a prescriptive easement across the property of the Waldeck United Methodist Church. Therefore, we affirm, in part, and reverse, in part, the judgment of the Circuit Court of Lewis County, and remand this case for entry of a judgment consistent with this opinion.

Affirmed, in part; reversed, in part; and remanded.