470 S.E.2d 408

Kevin CARR and Teresa Carr, Plaintiffs
Below, Appellees,

v.

Celia Jean CONSTABLE, Defendant
Below, Appellant.

No. 22967.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 17, 1996.

Decided April 4, 1996.

James W. Courrier, Jr., Barr & James, Keyser, for Appellant.

No Appearance for Appellees.

PER CURIAM:

Celia Jean Constable appeals an order of the Circuit Court of Mineral County finding that her property was encumbered by a prescriptive easement for ingress and egress to the adjoining property. On appeal, Ms. Constable argues because her property's use was by permission, Kevin Carr and Teresa Carr, his wife, the owners of the adjoining property, failed to establish one of the predicates for a prescriptive easement, which requires the open, continuous and uninterrupted use of another's property, under a *bona fide* claim of right and without objection for a period of ten years. Because the record shows that Ms. Constable gave the Carrs' predecessors in interest permission to use her property during the ten years of use

alleged by the Carrs, we reversed the circuit court.

## I

### FACTS

Ms. Constable owns a lot, designated as lot 116, located in Mineral County along U.S. Route 220 in the Knobley Mountain Orchard Subdivision, several miles outside the City of Keyser. The Carrs own lot 117 which adjoins Ms. Constable's property. Both lots are located on U.S. Route 220 and are approximately 90 feet wide and 575 feet deep. The front of the lots is relatively flat and the remainder, hilly. The disputed prescriptive easement concerns a semi-circular driveway crossing the front of both lots and allowing each property separate access to U.S. Route 220 and access by crossing the other lot.

Both lots were purchased on April 7, 1953 by Clarence R. and Nelda R. Constable, the former parents-in-law of Ms. Constable. Mr. and Mrs. Clarence Constable lived on the property in a house situated on lot 117 and, sometime in the 1950's, began entering and exiting their property via the semi-circular driveway that cut across both lots. At some point, while both lots were owned by Mr. and Mrs. Clarence Constable, a trailer was put on lot 116 and various relatives of Mr. and Mrs. Clarence Constable, including their son and Ms. Constable, lived in the trailer. Common use was made of the driveway by Mr. and Mrs. Clarence Constable and their relatives.

On July 31, 1981, Mr. and Mrs Clarence Constable sold both lots. Lot 116 was sold to their son, Richard, and Ms. Constable, who was then Richard's wife. Lot 117 was sold to Jerry W. and Petranna M. Leatherman. Neither deed contained a reference to a driveway easement. According to Ms. Constable and Mr. Leatherman, although the separate ownership of the semi-circular driveway was known, the Constables and the Leathermans gave the other permission to use their part of the driveway.[1]

---

1. The following exchange occurred between Mr. Leatherman and James W. Courrier, Jr., Esq., Ms. Constable's lawyer:

    Q. Basically, they gave you permission to use the other one['s driveway]?

    A. Yeah, because at that time, basically, if they couldn't use the other driveway, they couldn't have turned their vehicle around in their, in their [sic] driveway.

On June 16, 1986, Richard Constable, as part of his divorce proceeding transferred his interest in lot 116 to Ms. Constable. The permissive use of the driveway continued for several years. On December 11, 1990, the Leathermans sold lot 117 to the Carrs, who rented the property back to the Leathermans for several months. In February 1991, the Carrs rented the lot 117 house to Tina Duckwork.[2] The evening that Ms. Duckwork moved into the house, Ms. Constable informed her that she was not to use any portion of the driveway located on Mrs. Constable's property. Ms. Duckwork testified that Ms. Constable "just asked me, said that side lane was hers, and she'd appreciate it if I didn't use it." Ms. Constable testified that on the night Ms. Duckwork moved in she "informed her [Ms. Duckwork] that I didn't want them parking over beside my car, right in front, right at my trailer, that that wasn't their driveway to use that this is my driveway over here, this is my property."

After repeated problems with either Ms. Duckwork or the Carrs using her driveway, in approximately March 1993, Ms. Constable erected a chain link fence on her property blocking the driveway.

Since Ms. Duckwork vacated the lot 117 house in May 1992, the house has remained vacant. The Carrs maintain that using the lot 117 driveway to access Route 220 is very hazardous because of a blind curve and the angle of the driveway's connection to Route 220. On February 22, 1994, the Carrs, through counsel, asked Ms. Constable to remove the fence. After Ms. Constable refused to remove the fence, the Carrs filed suit in circuit court. In their complaint, the Carrs allege that as a result of the blocked driveway, they lost rents and profits because they were unable to rent the house. At trial, Ms. Constable alleged that renovation of the house, and not the blocked driveway, was the primary reason why the house did not rent.

After a bench trial that included a view of the driveway, the circuit court, by order entered on December 1, 1994, found that Mr. and Mrs. Carr had, by clear and convincing evidence, established an easement by prescription over the common driveway and ordered Ms. Constable to remove the fence to allow for common usage.[3] By order entered on December 23, 1994, the circuit court found Ms. Constable's erection of the fence to be "deliberate and malicious and done only for harassment purposes." Based on this finding the circuit court awarded the Carrs "monetary damages in the amount of $300 per month from March 1993 until the fence is removed."

Ms. Constable appealed to this Court and the circuit court granted Ms. Constable's motion for a stay. On appeal, Ms. Constable argues the following: (1) No prescriptive easement was created because she gave permission to the Carrs' predecessors in interest

---

Ms. Constable testified that she and the Leathermans were friends and helping each other was by "mutual agreement, it really didn't have to be said...."

2. Ms. Duckwork testified that she moved into the lot 117 house in February 1990; however, she also testified that she lived in the lot 117 house just over a year and moved out in May 1992. All parties agree that Ms. Constable installed the fence blocking the driveway in March 1993 and that lot 117 was sold to the Carrs on December 11, 1990. Ms. Duckwork also testified that no fence blocked the driveway when she lived in the lot 117 house. Considering the record including Ms. Duckwork's testimony, it is evident that she must have lived in the lot 117 house from February 1991 through May 1992.

3. The circuit court's December 1, 1994 order made the following findings:
    1. That the Plaintiff [sic], had, by clear and convincing evidence, proven that the Plaintiff [sic] and his [sic] predecessors in title had established an easement by prescription over and across that portion of the common driveway located upon the property of the Defendant, and therefore had a right to the use of said driveway for the purpose of ingress to and egress from their adjoining property;
    2. That the Defendant has a prescriptive easement over and across that portion of the common driveway which is located on the property of the Plaintiff [sic], and therefore had a right to use the said driveway for the purpose of ingress to and egress from their [sic] adjoining property;
    3. That both parties shall keep the common driveway clear and open at all times for purposes of allowing ingress and egress across said common driveway by both parties, by the tenants of both parties, by the guests of both parties, and by the heirs and assigns of both parties.

to use her driveway; and, (2) Given the evidence, the award of damages in the amount of $300.00 per month for lost rent is excessive.

## II

### STANDARD OF REVIEW

■ Recently, we repeated our general standard of review in civil cases. Syl. pt. 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996) states: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" In Syl. pt. 1, in part, *In Interest of: Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996), we discussed when a finding is "clearly erroneous" by stating:

> A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

We note that Rule 52(a) (1988) of the *W.Va.R.Civ.P.* requires a circuit court to "find the facts specially and state separately its conclusions of law."[4] In the trial transcript, the circuit court said that because "everyone used both driveways since Nineteen Fifty–Three," a prescriptive easement existed. The circuit court made no specific

finding regarding Ms. Constable's permissive use argument, but given the ultimate holding, that argument must have been rejected. *See* note 3 for the circuit court's written findings. Although neither party addressed the sufficiency of the circuit court's findings, we have long held that the failure to make adequate findings "authorizes the appellate court to make independent factual determinations without resorting to remand where the record contains sufficient dispositive facts for decision." Syl. pt. 1, in part, *Tomkies v. Tomkies,* 158 W.Va. 872, 215 S.E.2d 652 (1975). *In accord* Syl. pt. 1, *Thomas v. Board of Educ. of McDowell County,* 181 W.Va. 514, 383 S.E.2d 318 (1989)(per curiam).

With this standard in mind, we review the circuit court's order that the semi-circular driveway on both properties was subject to a prescriptive easement.

## III

### DISCUSSION

■ The legal requirements for acquisition for a prescription easement are well settled. Syl. pt. 1, *Holland v. Flanagan,* 139 W.Va. 884, 81 S.E.2d 908 (1954) states:

> The open, continuous and uninterrupted use of a road over the land of *another,* under *bona fide* claim of right, and without objection from the owner, for a period of ten years, creates in the user of such road a right by prescription to the continued use thereof. In the absence of any one or all of such requisites, the claimant of a private way does not acquire such way by prescription over the lands of *another.*

---

**4.** Rule 52(a) (1988) of the *W.Va.R.Civ.P.* provides:
*Effect.*—In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of appropriate judgment; and in granting or refusing preliminary injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact, whether base on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a commissioner, to the extent that the court adopts them, shall be considered as the findings of the court. It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b).

(Emphasis added.) *In accord* Syl. pt. 2, *Keller v. Hartman*, 175 W.Va. 418, 333 S.E.2d 89 (1985).

Syl. pt. 1, *Town of Paden City v. Felton*, 136 W.Va. 127, 66 S.E.2d 280 (1951) states:

To establish an easement by prescription there must be continued and uninterrupted use or enjoyment for at least ten years, identity of the thing enjoyed, and a claim of right adverse to the *owner of the land*, known to and acquiesced in by him; but if the use is by permission of the owner an easement is not created by such use.

(Emphasis added.)

■ Finally we note that the party claiming the prescriptive easement has the burden of proving the requirements by "clear and convincing evidence." In Syl. pt. 1, *Berkeley Development Corp. v. Hutzler*, 159 W.Va. 844, 229 S.E.2d 732 (1976), we stated:

The burden of proving an easement rests on the party claiming such right and must be established by clear and convincing evidence.

*In accord* Syl. pt. 2, *Crane v. Hayes*, 187 W.Va. 198, 417 S.E.2d 117 (1992)(per curiam); Syl. pt. 3, *Norman v. Belcher*, 180 W.Va. 581, 378 S.E.2d 446 (1989)(per curiam); Syl. pt. 3, *Keller v. Hartman, supra*.

■ In *Keller v. Hartman*, 175 W.Va. at 424, 333 S.E.2d at 95, we noted that "[i]t is fundamental that 'no person can have an easement on his own property . . . ' *Stuart v. Lake Washington Realty Corp.*, 141 W.Va. 627, 640, 92 S.E.2d 891 [, 899] (1956)." In order to have adverse use, a predicate necessary for a prescriptive easement, the land used must be owned by someone other than the user. *See Holland v. Flanagan, supra; Berkeley Development Corp. v. Hutzler, supra.*

In the case *sub judice*, from 1953 to 1981, the first twenty-eight years of the claimed prescriptive period, both parts of the semi-circular driveway shared a common ownership and the two lots were used as a single tract of land. The owners and the users were the same. Mr. and Mrs. Clarence Constable owned both lots 116 and 117 from 1953 to 1981, and, therefore no easement concerning the use of the driveway could have arisen during their common ownership of the lots. However, because of the July 31, 1981 sale of the lots by Mr. and Mrs. Clarence Constable to distinct and separate parties, the possibility of a prescriptive easement arising after July 31, 1981 came into existence.

■ However between July 31, 1981 through at least December 11, 1990 (date of deed transferring lot 117 from the Leathermans to the Carrs), the owners of lots 116 and 117 during that period, agreed that use of the semi-circular driveway was by permission of the other lot's owners. Syl. pt. 1, in part, *Town of Paden City v. Felton, supra*, states that "if the use is by permission of the owner, an easement is not created by such use." *See supra* p. 411 for full text of Syl. pt. 1, *Town of Paden City v. Felton.*

Finally, we note that the parties agree that Ms. Constable withdrew her permission for use of her portion of the semi-circular driveway in February 1991, when Ms. Duckwork moved into the lot 117 house.

■ Based on our review of the record, we find that the Carrs failed to establish the following predicates necessary for a prescriptive easement: first, the use must occur on "the land of another;" and second, the use must be adverse, "open, continuous and uninterrupted . . . for a ten year period." In this case, because the property where the use occurred had common ownership between 1953 and July 31, 1981, the use did not occur on "the land of another." Next, because Ms. Constable gave her permission for the use of her property between July 31, 1981 and February 1991, the remaining period of use does not meet the requirement that such use be adverse, "open, continuous and uninterrupted . . . for a ten year period." We find that the circuit court's conclusion that a prescriptive easement arose during the common ownership of the two lots is erroneous and neither does the record support finding a prescriptive easement arising after the common ownership ended because use of Ms. Constable's driveway was by permission from July 31, 1981 until December 11, 1990. Ms. Consta-

ble rescinded her permission in February 1991.[5]

Because the evidence in the record clearly demonstrates that the Carrs failed to prove all the requirements necessary for a prescriptive easement, we find that the circuit court erroneously concluded that a prescriptive easement existed on Ms. Constable's property and abused its discretion in ordering the removal of a fence on Ms. Constable's property blocking use of her driveway.

For the above stated reasons, the decision of the Circuit Court of Mineral County is reversed.

Reversed.

---

**5.** Based on our determination that the Carrs did not acquire the right to use the driveway by prescriptive easement, no damages can be assessed against Ms. Constable, and therefore, we find no reason to address Ms. Constable's arguments concerning the award of damages.