550 S.E.2d 66

**GRIST LUMBER, INC., a West Virginia Corporation, Plaintiff Below, Appellee,**

v.

**Paul R. BROWN, Jr., Defendant Below, Appellant.**

No. 28722.

Supreme Court of Appeals of West Virginia.

Submitted April 24, 2001.

Decided May 11, 2001.

Dissenting Opinion of Justice Maynard July 6, 2001.

---

Richard E. Ford, Jr., the Ford Law Firm, Lewisburg, for appellee.

Barry L. Bruce, Barry L. Bruce & Associates, Lewisburg.

PER CURIAM:

This is an appeal by Mr. Paul R. Brown, Jr., (hereinafter "Appellant") from a July 9, 1999, order of the Circuit Court of Greenbrier County finding that Grist Lumber, Inc., (hereinafter "Appellee" or "Grist Lumber") was entitled to a prescriptive easement for timbering purposes across property owned by the Appellant and an April 12, 2000, order setting forth the width of such easement. The Appellant contends that the lower court erred in granting the prescriptive easement for timbering purposes because Grist Lumber failed to establish the use of the easement for timbering purposes during any ten-year period. The Appellant further contends that the use of the easement for timbering purposes with the express permission of the Appellant's predecessor in title cannot provide the basis for a prescriptive easement for timbering purposes. The Appellant also maintains that the lower court erred in its determination of the width of the prescriptive easement.

Upon review of the briefs, arguments of counsel, and the record, we reverse the lower court's conclusion that the easement may be used for timbering purposes, affirm the lower court's conclusion regarding the width of the easement, and remand for entry of an order consistent with this opinion.

I. Facts and Procedural History

The Appellant purchased property in Greenbrier County, West Virginia, on September 29, 1997.[1] Grist Lumber purchased adjoining property [2] on May 11, 1998. Grist Lumber's property had been owned since 1911 by its predecessors in title, the Coiner family.[3] Grist Lumber maintained that an easement existed over the Appellant's property, connecting Grist Lumber's property to Rader Valley Road, and had been used continuously by the Coiner family since 1911. Upon its purchase of the property in 1998, Grist Lumber planned to utilize the easement to remove timber from its property. The Appellant denied access to the easement and placed a locked gate across the easement on July 23, 1998.

On September 4, 1998, Grist Lumber filed an action in the lower court seeking damages and injunctive relief against the Appellant. Grist Lumber asserted that the Coiner family had used the easement in an open, notorious, and continuous manner for more than ten years, establishing a prescriptive easement. Grist Lumber further asserted that the easement had been used to transport lumber during the prescriptive period, thus justifying a finding by the lower court that

1. The Appellant's property consists of approximately 180 acres.

2. Grist Lumber's property consists of approximately 162 acres.

3. The Coiner family resided in a home on the property until Mr. Coiner's death in 1940. Subsequent to his death, no one resided in the home, and the Coiner relatives visited the property on an occasional basis. The lower court found that "the roadway was used for vehicular traffic from the early to mid–1940's to the present, although sometimes use was sporadic." The lower court further found that "during the aforesaid period, at times, the condition of the roadway deteriorated and fell into various states of disrepair."

Grist Lumber was entitled to use the easement for that purpose.

Grist Lumber specifically relied upon two documents, dated 1982 and 1985, signed by the Appellant's father, also his predecessor in title. These documents were both entitled "Right of Way Understanding." The 1982 document, signed by Paul Brown, Sr., the Appellant's father and predecessor in title, provided that Plum Creek, Inc., could make permanent improvements to the easement "for the purpose of removing timber products" from the Coiner property from October 28, 1982, through November 1, 1984, "or sooner if the operation is completed prior to November 1, 1984." The 1985 document, again signed by Mr. Brown, Sr., provided that TODCO Wood Products could make permanent improvements to the easement "for the purpose of removing timber products" from the Coiner property from April 26, 1985, through December 1, 1986. Both instances of upgrades to the easement for the purpose of timber removal were completed at the expense of Paul Brown, Sr., the Appellant's predecessor in title.

The lower court granted temporary injunctive relief on October 28, 1998, and held that Grist Lumber enjoyed a prescriptive easement for timbering purposes. The lower court explained as follows:

[Grist Lumber] has shown by clear and convincing evidence that there has been open, continuous and uninterrupted use of the roadway over [Brown's] lands, under a bona fide claim of title . . . for a period in excess of ten years. That the use aforesaid created an easement by prescription along the aforesaid roadway.

. . . .

That during that period, on at least two occasions, the property had been timbered and the roadway had been used for removing timber. Additionally, the Court finds that at one time, there was a sawmill on the real estate of [Grist Lumber].

By order dated July 9, 1999, the lower court granted permanent injunctive relief after an evidentiary hearing. The lower court explained as follows in its very thorough findings of fact:

[Brown's] father, also his predecessor in title, acknowledged the existence of a right-of-way across his lands in agreements executed in 1982 and 1985 which provided, among other things, that the roadway would be improved at the expense of [Grist Lumber's] predecessors in title, and that the improvements to the roadway would be permanent in nature.

. . . .

That in the period of the ownership of [Grist Lumber's] predecessors in title, there is evidence that the dominant tenancy, which the prescriptive easement serves, was used for farming, residential, recreational, agricultural purposes, and, at least on two occasions, for commercial timber harvest.

In the conclusions of law in the July 9, 1999, order, the lower court held, in pertinent part, as follows:

[Grist Lumber] has demonstrated by clear and convincing evidence that from a period at least as early as the 1930's, and perhaps as far back as 1909, [Grist Lumber's] predecessors in title used the roadway crossing the lands of the [Appellant], or his predecessors in title, as the sole means of ingress to and egress from their property.

The Court finds that [Grist Lumber] has shown by clear and convincing evidence that there has been open, continuous and uninterrupted use of the roadway over [the Appellant's] lands, under a bona fide claim of title, for a period in excess of ten years

[T]he character and purpose of the easement acquired by prescription as determined by the use made of it during the prescriptive period is sufficient to establish the following uses: farming, vehicular travel, residential, recreation, and timber harvesting and removal, as long as it does not interfere with the Brown property and it does not unduly burden it.

By order dated April 12, 2000, the lower court established that the easement would, generally, be twelve feet wide, "together with such additional space on either side as is necessary for [out-grading,] regular repair and maintenance." The turns would be fourteen feet wide, except for two turns which

would be twenty feet wide each. The width of the right of way would be thirty feet at its point of intersection with Rader Valley Road. The lower court based its conclusions regarding the appropriate width of the easement upon aerial photographs of the easement, taken both before and after the 1982 and 1985 permanent improvements effected at the expense of the owner of the servient estate, Paul Brown, Sr.

The Appellant appealed to this Court, contending that the prescriptive easement cannot be used for removal of timber since the "character and purpose of the easement acquired by prescription is determined by the use made of it during the prescriptive period." Syl. Pt. 3, *Burns v. Goff*, 164 W.Va. 301, 262 S.E.2d 772 (1980); *Clain–Stefanelli v. Thompson*, 199 W.Va. 590, 486 S.E.2d 330 (1997). The Appellant's allegations of error, discussed in detail below, center upon the contention that the record reflects that the road was not used for the purpose of transporting timber, except during the confines of the express agreements of 1982 and 1985, with the express permission of the Appellant's predecessor in title. The Appellant argues that these two instances, permissive in nature, are insufficient to justify the lower court's legal conclusion that Grist Lumber is entitled to a prescriptive easement for timbering purposes. The Appellant further contends that the existence of a sawmill on the Coiner property in the 1920's is insufficient to justify the lower court's conclusions.

## II. Standard of Review

■ In syllabus point four of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996), this Court set forth the following standard of review: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." In our review of this matter, we accept the lower court's findings of fact, based upon essentially undisputed facts, and detect no basis for reversal of such findings of fact. In our examination of the lower court's conclusions of law based upon those facts, however, we employ a *de novo* standard of review.

## III. The Appellant's Allegations of Error

■ The Appellant does not dispute the lower court's conclusion that Grist Lumber presented sufficient evidence to establish its entitlement to a prescriptive easement over the Appellant's property. In that regard, the record clearly indicates that the easement across the servient estate had been used continuously by the dominant estate since 1911. As this Court acknowledged syllabus point one, in part, of *Holland v. Flanagan*, 139 W.Va. 884, 81 S.E.2d 908 (1954), "[t]he open, continuous and uninterrupted use of a road over the lands of another, under bona fide claim of right, and without objection from the owner, for a period of ten years, creates in the user of such road a right by prescription to the continued use thereof."

■ The principal point of error alleged by the Appellant is the lower court's ruling regarding the nature of the use of the easement to which the dominant estate is entitled. Specifically, the Appellant contends that Grist Lumber failed to establish that it was entitled to use the prescriptive easement for timbering purposes. The Appellant asserts that the use made of the easement during the prescriptive period [4] did not include timbering, with the exception of the

---

4. Interestingly, the Appellant intimates that the ten-year "prescriptive period" for purposes of determining Grist Lumber's entitlement to the prescriptive easement could be considered 1911 to 1921, the ten years immediately following the Coiners' purchase of the property and the time during which the use of the road was initiated. No timbering took place on the property during that ten-year period. Grist Lumber asserts that the prescriptive period during which the easement was created was actually from 1911 to the present, contending that the "prescriptive period" is not legally limited to any particular ten-

year span, but rather includes all years of usage with a minimum of ten years. The law of this state is in accord with the conception advanced by Grist Lumber; where an action seeking designation of a prescriptive easement is brought, a *precise ten-year period within an extensive history* of use does not have to be asserted, as long as the usage has been conducted continuously for at least ten years. The entire history of the usage, as presented in evidence, must be evaluated to determine the character and scope of the prescriptive easement.

two limited instances, discussed above, in which timber was removed from the Coiner property with the permission of the Appellant's predecessor in title and under express agreements with precise termination dates. The Appellant contends that permission to use the easement for timbering was rescinded at the conclusion of each of the two agreement periods.

The Appellant further asserts that the record indicates that the Coiner family maintained a sawmill on the dominant estate only for a limited time in the 1920's. There is scant evidence regarding the degree to which the easement was utilized to haul timber or the degree to which the sawmill was used for commercial sales of timber. Mr. Marshall Bryant testified that he helped his father deliver a sawmill to the Coiner property by a team of horses via another road, Burns Creek Road, in the early 1920's.[5]

Based upon the two instances of timber removal pursuant to the agreements of 1982 and 1985, as well as evidence concerning the existence of a sawmill on the Coiner property in the 1920's, the lower court arrived at the legal conclusion that such evidence justified a determination that the prescriptive easement should include use of the easement for timbering purposes. Upon appellate review, we regard that determination as a legal conclusion based upon the essentially undisputed facts. Our review of that legal conclusion is therefore de novo.

## IV. Analysis

This Court's analysis must include the recognition that "[t]he burden of proving an easement rests on the party claiming such right and must be established by clear and convincing proof." Syl. Pt. 1, Berkeley Development Corp. v. Hutzler, 159 W.Va. 844, 229 S.E.2d 732 (1976). We also predicate our examination upon the established legal standard that the historical use of the easement defines the prospective use of the easement. The parties agree that "the character and purpose of the easement acquired by prescription is determined by the use made of it during the prescriptive period." Syl. Pt. 3, Burns, 164 W. Va. at 301, 262 S.E.2d at 772

(1980); In other words, "[t]he use of the land defines the parameters of the easement." Wheeling Stamping v. Warwood Land, 186 W.Va. 255, 258, 412 S.E.2d 253, 256 (1991). The scope of the right acquired by prescription "will be commensurate with and measured by the use" that originally gave rise to the easement. Shock v. Holt Lumber Co., 107 W.Va. 259, 262, 148 S.E. 73, 74 (1929).

In Burns, for instance, a driveway had been used during the prescriptive period for ingress and egress. Subsequent use of the driveway for commercial purposes was precluded based upon the concept that commercial usage would constitute "a change in the character of [its] use." 164 W.Va. at 305, 262 S.E.2d at 775. In Staggers v. Hines, 87 W.Va. 65, 104 S.E. 768 (1920), this Court ruled that despite occasional use of the easement for timbering during the prescriptive period, the timbering usage had not been sufficient to establish a prescriptive easement for timbering purposes. The Court explained: "It is well settled that a way acquired by prescription has its limitations. If acquired for one purpose, it cannot be broadened or diverted to another; and its character and extent are ascertainable and determinable by the use made of it during the period of prescription." Id. at 70, 104 S.E.2d at 770.

In the present case, the record reflects very infrequent incidents of use of the road for timbering from 1911 to the placement of the gate across the easement in 1998. There is no evidence that the usage of the road for timber removal continued in an uninterrupted fashion for any ten-year period. The only well-documented instances of usage for timber removal occurred in 1982 and 1985 where express permission by the Appellant's predecessor in title was granted for timbering use for a limited period of time. This concept of permission is significant in examination of issues relating to prescriptive easements because established precedent dictates that a grant of permission by the owner of the servient estate defeats the concept of a prescriptive easement. As this Court noted in syllabus point one of Town of Paden City v. Felton, 136 W.Va. 127, 66 S.E.2d 280

5. Burns Creek Road apparently became an abandoned state highway in 1991.

(1951), "[t]o establish an easement by prescription there must be continuous and uninterrupted use or enjoyment for at least ten years, identity of the thing enjoyed, and a claim of right adverse to the owner of the land, known to and acquiesced in by him; but if the use is by permission of the owner, an easement is not created by such use." *See also Conley v. Conley,* 168 W.Va. 500, 285 S.E.2d 140 (1981). Thus, a prescriptive easement does not arise when the owner of the servient estate has granted permission for such use. Syl. Pt. 4, *Carr v. Constable,* 196 W.Va. 276, 470 S.E.2d 408 (1996). In *Jamison v. Waldeck United Methodist Church,* 191 W.Va. 288, 445 S.E.2d 229 (1994), this Court encountered a situation in which property owners brought suit claiming a prescriptive easement over a church's neighboring property, and the Court explained: "We agree with the Church that it is well established that if a property owner grants someone permission to use a piece of land for a particular purpose, a prescriptive easement cannot be created during the time the land is so used." 191 W.Va. at 292, 445 S.E.2d at 233.

## V. Conclusion

In the case sub judice, we conclude that the essentially undisputed facts do not justify the lower court's legal conclusion that the easement may be used by Grist Lumber for timbering purposes. The use of the easement in an open, continuous, and uninterrupted manner for a minimum of ten years properly established a prescriptive easement in favor of the owner of the dominant estate. The character and extent of such easement, however, must be limited to the use made of the easement during that open, continuous, and uninterrupted period, at least ten years in duration. The isolated instances of timbering, as evidenced by the record of this case, constitute an exception to the ordinary use of the easement for ingress and egress and should not be employed as a foundation for framing the parameters of the easement pro-

spectively. This conclusion is particularly inescapable where the two predominant instances of timbering occurred with the permission of the Appellant's predecessor in title.

Based upon the foregoing analysis, we reverse the lower court's legal conclusion that Grist Lumber is entitled to utilize the easement for timbering purposes. On the contrary, we hold that the sporadic use of the easement for removal of timber, particularly in light of the fact that such use was with the express permission of the Appellant's predecessor in title as the owner of the servient estate, does not justify the conclusion that the easement should be utilized for purposes other than ingress and egress.[6] Thus, the prospective use of the easement by the owner of the dominant estate shall be limited to such usage.

The Appellant also challenges the lower court's establishment of the width of the road, contending that the historical use of the roadway does not support such a conclusion. The lower court performed extensive analysis regarding the width of the road, and we do not reverse the lower court's findings of fact as clearly erroneous. During the history of usage, the road was permanently widened and improved twice at the expense of the owner of the servient estate. While the use for timbering purposes was limited to two temporary periods, as discussed above, the improvements to the road were designated as permanent in nature. The timbering usage was to cease at the conclusion of the terms of the agreements; the improvements were to remain. Therefore, we agree with the legal conclusions of the lower court regarding the width of the easement and do not disturb the lower court's determinations in that regard.

Affirmed in part; reversed in part, and remanded with directions.

MAYNARD, J., dissents and files a dissenting opinion.

---

**6.** We note that Grist Lumber did not assert the right to use of the easement by necessity. If it had asserted and proven such right, the issue of historic use of the easement would not be a hindrance to its proposed timbering usage and would permit full exploitation and enjoyment. Where the easement is asserted through prescription, however, the essence of the matter is the historic use of the easement. Future use must be in consonance with historic use.

MAYNARD, Justice, dissenting:

(Filed July 6, 2001)

I dissent because I believe the evidence in this case establishes a prescriptive easement for removing timber across the appellant's property.

There was clear and convincing evidence presented in this case showing that the roadway in question has been used since at least 1911, and more importantly, that it has been used for timbering purposes. Specifically, the record indicates that a saw mill was located on the appellee's real estate in the 1920s. Moreover, timbering operations were conducted on the appellee's property in the 1980s as evidenced by two documents showing that the subject road was upgraded at that time for that purpose.

The majority claims that these documents granted express permission by the appellant's predecessor in title for the roadway to be used for timbering for a limited period of time. By granting permission for such use, the majority concluded that a prescriptive easement has not been established in accordance with the requirements set forth in *Town of Paden City v. Felton*, 136 W.Va. 127, 66 S.E.2d 280 (1951) (an easement is not created if the use is by permission of the owner). However, the circuit court found that these documents were merely acknowledgments of the existence of the right-of-way that were used to allow third parties to make improvements upon the road at the expense of the appellee's predecessors in title. This Court has repeatedly held that " ' "[t]he finding of a trial court upon facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such findings." *Daugherty v. Ellis*, Point 6 Syllabus, 142 W.Va. 340, 97 S.E.2d 33.' Syllabus Point 6, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962)." Syllabus Point 2, *Fraley v. Family Dollar Stores of Marlinton, West Virginia, Inc.*, 188 W.Va. 35, 422 S.E.2d 512 (1992). In this case, it does not.

Thus, in light of the evidence that the roadway in question was used for several decades for vehicular traffic including the removal of timber, I would have affirmed the final order of the circuit court. Accordingly, I respectfully dissent.